# Richmond

## LIBERTY MUTUAL INSURANCE COMPANY, AN INSURANCE CORPORATION V. MARGARET B. TILLER, TRADING AS TILLER'S CARS.

June 20, 1949.

Record No. 3470.

Present, All the Justices.

The opinion states the case.

*Venable, Miller, Parsons & Kyle*, for the plaintiff in error.

*Samuel Goldblatt* and *Page, Page & Page,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

G. W. Bozarth was the owner of a dump truck and he had employed one John Baker, Jr., as his driver. While Baker was driving the dump truck on February 11, 1946, returning from the Naval Operating Base the truck collided with two cars belonging to the defendant in error. An action was brought by the defendant in error against Bozarth and Baker, but Bozarth, by affidavit, denied operation and control, and the jury found its verdict against Baker alone. An execution was issued upon the judgment and returned "no effects."

The Liberty Mutual Insurance Company, the plaintiff in error, was the insurer in a policy of insurance in which Bozarth was the named assured. The policy contained the usual omnibus clause, extending the coverage to persons legally operating the vehicle with permission, express or implied, of such owner. Under the provisions of the policy Baker became one of the insured and was covered by the policy while he was operating the dump truck for Bozarth or with his permission.

At the time of the collision Baker was not operating the truck for his employer, but was on a mission of his own. He had gone to the bus terminal in Norfolk in the night time for headache powders, and while there he picked up two sailors and took them to the Naval Operating Base, a distance of some ten miles. Upon his return the collision occurred. He was arrested, convicted of reckless driving, and fined $100 and costs.

The issue involved is whether or not Baker had permission, express or implied, from the owner to use the truck for purposes other than the business of the owner, and whether there is any evidence on which the verdict of the jury could be sustained. There were three assignments of error, two of them dealing with the sufficiency of the evidence, and the third with the plaintiff's instructions.

In speaking of the custody and use of the truck, Baker, the driver, said this: "Well, I kept the truck at all times

* * *. No one else drove it but me, and I kept it at my house at all times and evenings after working hours, if I had to go to the store, some place, I used the truck, and if I wanted to go over to Mr. Bozarth's, to see him about—concerning the thing, I used the truck to go over there."

From the evidence the conclusion is thoroughly justified that Baker had the exclusive control of the truck at all times, and in the evenings and at night he kept it at his own home and used it at will for his own purposes whenever he pleased. He drove the truck to the home of his employer, Mr. Bozarth, on a mission of his own, and there conferred with Mr. Bozarth. Mr. Bozarth had never told Baker not to use the truck in the evenings or at night, but on the other hand, he instructed him to take the truck and keep it. From the evidence it is disclosed conclusively that Baker used the truck in the evenings to go to the grocery store for his groceries, and on Sundays to go for a ride with his wife.

At the trial Baker testified that Bozarth told him that the insurance company wanted a statement from him; that he should tell the truth about the matter, and that no one could do anything to him or bother him. He did not reprimand him for using the truck without permission.

Baker had the gasoline placed in the truck and had it serviced at the service stations. He also had repairs made and the charges for these things were paid by Bozarth. Baker's use of the truck naturally increased the gasoline bill, and in this way Bozarth also must have known of Baker's use of the truck, but he never complained about the excess gasoline bill.

Mrs. Baker corroborated her husband concerning the use made of the truck, and also concerning the trips to the home of Bozarth on Baker's own business. She said that Mr. Bozarth would come out near the truck while she would be in it waiting, and was bound to have known that Baker was using it for his own purposes.

Mrs. Baker also testified that Bozarth came to their apartment one afternoon and told Mr. Baker, "You take the

car (truck) as if it was your car, in your possession." Q. "Said what?" A. "Mr. Bozarth told my husband one afternoon when he came over to the house, he said 'you take the car and keep it in your possession and use it as if it was your car'. And I do know my husband put the gas and oil in the car, because I have been to the service station with him at nights to fill the car up with gas and oil for the next day." Then again she said, speaking of Mr. Bozarth, "He left the car absolutely in my husband's possession, night and day." On cross-examination her direct testimony was somewhat weakened by her inconsistent statements, but that fact does not render her testimony nugatory. It is still the province of the jury to pass upon such inconsistencies and to give or withhold its assent to the truthfulness of the particular statement as it sees fit. See *Bristow* v. *Brauer*, 175 Va. 118, 7 S. E. (2d) 93.

There is considerable other evidence which tends to show that Baker had exclusive control of the truck and used it at will for his own purposes, and that Mr. Bozarth never instructed him not to do so.

In this situation and upon conflicting evidence, the jury found by its verdict that Baker was using the truck under the express or implied permission of Bozarth, the owner. Code (Michie, 1942), section 4326a, requires that every policy of the nature of the one here involved include the omnibus clause. The statute is made a part of each policy. The coverage is not restricted to the named insured, but is expressly extended to embrace "any person legally using or operating the same with the permission, express or implied, of such owner."

In *Lumbermens Mut. Cas. Co.* v. *Indemnity Ins. Co.*, 186 Va. 204, 42 S. E. (2d) 298, the purpose of the statute was defined. It was there held that it was for the benefit of a party who had suffered damage by the negligent use of the insured's car when operated by another with the permission of the owner, and that every automobile liability policy issued in Virginia will be considered to contain an omnibus

clause extending the said coverage to one legally operating the car with the owner's permission, express or implied.

There is other broadening and liberalizing language in the statute. Liability is not limited to acts of negligence in the operation of the motor vehicle in the business of the owner, but such operation may be "in the business of such owner *or otherwise*". (Italics supplied.)

■ *State Farm Mut. Ins. Co.* v. *Cook*, 186 Va. 658, 43 S. E. (2d) 863, is directly in point and controls the case under consideration. The facts are very similar. The late Mr. Justice Browning, speaking for the Court in connection with the trend to liberalization, said: "The trend in Virginia of legislative enactment as well as judicial determination and construction has been towards liberalizing and broadening the coverage provisions of liability insurance policies. That this is so is evidenced by the enactment by the State legislature in 1944 of what is known as the Safety Responsibility Act, Code of Virginia (Michie), Cumulative Supp., 1946, section 2154(a12): '(6) No statement made by the insured or on his behalf and no violation of the terms of the policy, shall operate to defeat or avoid the policy so as to bar recovery within the limits provided in this Act.'" And in that case we held that the permission, express or implied, from the owner, which would render the operator of the car an additional insured, must be either an express permission or a permission reasonably to be implied from the circumstances of the case. See also, *Hinton* v. *Indemnity Ins. Co.*, 175 Va. 205, 8 S. E. (2d) 279.

In the opinion in the *Cook Case* the other Virginia cases touching this subject were so fully and so recently discussed that we deem it unnecessary to again review them here.

Whether Baker had permission, express or implied, to use the dump truck at the time of the collision was a question of fact for the jury.

■ The only instruction which was specifically called to our attention and which was claimed to have been erroneous

was P-5. The objection was made for the first time in oral argument before this court. The record fails to disclose that any proper exception was taken to this instruction, and there is no assignment of error specifically dealing with it. Therefore, under well-recognized principles, we will not undertake to pass upon the correctness of that instruction.

The judgment is accordingly affirmed.

*Affirmed.*