# Richmond

## RUBY ROBINSON v. FIDELITY AND CASUALTY COMPANY OF NEW YORK.

January 16, 1950.

Record No. 3564.

Present, All the Justices.

The opinion states the case.

*T. Helm Jones* and *William C. Worthington,* for the plaintiff in error.

*Williams, Cocke & Tunstall,* for the defendant in error.

STAPLES, J., delivered the opinion of the court.

The question here is whether the driver of the automobile, through whose negligence the plaintiff suffered personal injuries, was operating it with the implied permission of the insured, its owner. Previous to the institution of this action the plaintiff had recovered a judgment against the driver, Will D. Beasley, for $1,200 damages but, being unable to collect it from him, she sued the defendant insurance company on a policy of automobile liability insurance covering the car and issued to its owner William R. Willis.

When the plaintiff rested, the trial court sustained a motion of the defendant to strike out her evidence and enter final judgment in its favor. The plaintiff's evidence must therefore be considered under a rigid application of the rule which would have been applicable if there had been a demurrer to the evidence. *Jones* v. *Hanbury*, 158 Va. 842, 164 S. E. 545.

The defendant insists that this rule is not applicable here because, by agreement, the case was heard by the trial judge as a jury. *State Farm Mut. Ins. Co.* v. *Cook*, 186 Va. 658, 43 S. E. (2d) 863, is relied upon in support of this position. In that case, however, the judge passed upon the merits and considered the evidence of both plaintiff and defendant. There was no motion to strike. Here the effect of such motion was to reserve to the defendant the right to introduce additional evidence if it should be denied. Since it was sustained it withdrew the case from consideration by the judge *as a jury*.

Considering the evidence, therefore, from the standpoint most favorable to the plaintiff, it may be said that the following facts are established:

The insured, Wills, the owner of the automobile, was in the Merchant Marine, and in the early part of February, 1948, he boarded a ship and went to sea. Prior to his departure, he had been keeping steady company with a girl who was generally known by the name of Jean Wills and who was registered under the name of "Mrs. Jean Wills" at the DeLuxe Cabins where she lived. There was no evi-

dence, however, that she was actually married to Wills, or that he lived with her as man and wife. She was working as a waitress at a restaurant known as the Blue Bird Inn on the Virginia Beach Boulevard. Beasley, who was driving the Wills car when the accident occurred, also was working there and frequently saw the insured and the girl Jean together in the restaurant. On the night before Wills shipped out, he told Jean that "he was leaving the car with her, but he did not want to come back and find it wrecked." Beasley had become well acquainted with Wills and had many times ridden in the car with him and Jean before he went to sea. After Wills left, Beasley started going with Jean, who had taken possession of the car and was using it while Wills was gone. On the day of the accident Beasley had been driving the car for Jean. After they had stopped at a hotel on Main Street in the city of Norfolk, they found the car would not start. Thereupon Beasley phoned his brother, who ran a garage, and he towed the car to his garage on Brambleton Avenue. It was estimated that it would require about two hours to fix the car, so Beasley's brother allowed them to use his car to take Jean out to her home at the DeLuxe Cabins. Later Beasley returned to the garage, left his brother's car, and drove off in the insured's car which Jean was using. This was in accordance with Jean's instructions. A short time thereafter, while Beasley was driving the car over the Campostella bridge, the collision occurred which resulted in the plaintiff's injuries.

The defendant argues that the fact that Wills told Jean he was leaving the car with her is not direct evidence that he actually did so. But considered in connection with the fact that after he had gone she was in actual possession of the car, it is sufficient proof of the fact that he turned the car over to her for her own general use during his absence. Therefore, until his return, she stood in the shoes of the owner. *Liberty Mut. Ins. Co.* v. *Tiller*, 189 Va. 544, 53 S. E. (2d) 814; *Employers' Liability Assur. Corp.* v. *Carroll* (C. C. A., 4th Cir.), 139 F. (2d) 427.

■ The defendant also contends that, even if the insured, Wills, did turn the car over to Jean, she was a mere bailee and was not clothed with authority to permit its operation by Beasley. We think, however, under the circumstances of this case, considering the relationship between the insured and the girl Jean, she cannot be said to have been a mere bailee but was vested with general authority over the use and operation of the car and could permit its use by others under appropriate circumstances.

The facts in this case do not show, however, that she loaned the car to Beasley for his general personal use. At the time the car was taken to the garage Jean was an occupant and Beasley was driving it at her request. When Beasley's brother loaned them his car to take Jean to the DeLuxe Cabins, where she was living, it was understood that he would return his brother's car and at the same time drive the Wills car back to the cabins. It appears, therefore, that the action of Beasley in driving the car was an accommodation to and for the benefit of Jean. Her authority to thus avail herself of the help of Beasley in connection with the repair of the car is amply sustained by the evidence. Under these circumstances, Beasley must be considered as operating the car with the implied permission of the insured.

■ The defendant further takes the position that, notwithstanding this authority, at the time of the accident Beasley was actually using the car for his own purpose and not pursuant to the permission given him by Jean. Beasley testified that before returning to the DeLuxe Cabins he had to go over to his brother's home in Berkley, and that this route of returning to the cabins was two or three miles further than if he had gone straight down Princess Anne Road. The accident occurred while he was traveling the longer route. Did this circumstance, as a matter of law, revoke Beasley's authority to drive the car? We think not. There is no evidence that Jean gave him any instructions as to his line of travel or forbade his attending to such personal

affairs as might be reasonably consistent with driving the car to her home. The evidence is that Beasley was going with the girl and it indicates a very close relationship between them had existed for some months. It is within the province of a jury to determine whether, while he was doing her the favor of bringing her car to her, she would object to his going two or three miles out of the direct route to attend to a personal errand. We think such a slight deviation from that route was "too unimportant to have attached to (it) the import of annulling the protective features of the insurance policy" as a matter of law. See *State Farm Mut. Ins. Co.* v. *Cook*, 186 Va. 658, 43 S. E. (2d) 863; *Hinton* v. *Indemnity Ins. Co.*, 175 Va. 205, 8 S. E. (2d) 279.

In the final analysis, whether, under the circumstances, Beasley had implied authority to use the car for the purpose of going by his brother's home is a jury question. *Hinton* v. *Indemnity Ins. Co.*, *supra*. It follows that it was error for the trial court to strike out the plaintiff's evidence and the case must be reversed and remanded for a new trial.

*Reversed and remanded.*