**INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY,**
Appellant,

v.

**J. D. JANES,** Appellee.

No. 15609.

United States Court of Appeals
Fifth Circuit.

Feb. 23, 1956.

Phil Stone, James Stone & Sons, Oxford, Miss., for appellant.

Chester L. Sumners, Smallwood, Sumners & Hickman, Oxford, Miss., Smith & Hurdle, Holly Springs, Miss., for appellee.

Before HUTCHESON, Chief Judge, and JONES and BROWN, Circuit Judges.

BROWN, Circuit Judge.

On a standard liability insurance policy issued in Virginia to J. L. Forbes, record title owner, as the named assured, the District Court held the insurer liable under the Omnibus Clause[1] and the Clause Paramount of the Virginia Statute[2] for an accident in which the insured vehicle was being driven by Cavanaugh with the permission and consent of George Forbes, for whose use the car had been purchased by J. L., his brother.

The decisive facts found by the District Court are simple: in 1950 when the automobile was acquired, J. L., a resident of Newport News, Virginia, purchased it, in his name, for the use of his brother, George, then a minor and, as such, not able to finance it. Title was in J. L. Forbes with a chattel mortgage by him to a Virginia bank. George was to, and did, make the finance payments on the car while J. L. paid for the insurance with the understanding that George was to repay him for this when he could. In January 1952, when the original policy on the car was issued by appellant, and George had since become of age, J. L. advised the insurer's agent that the car was going to be used by his brother, George, and would be kept by him on the Marine Base near Memphis. In August 1952, to comply with rules of the Marine Base, J. L. gave a specific written permission[3] to his brother.

A second, renewal policy was issued in January 1953. On March 6, 1953, George loaned the automobile to his fellow-marine Cavanaugh, with the resulting collision in Mississippi with Janes' truck and judgment[4] against Cavanaugh.

1. "III Definition of Insured: With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. * * *."

2. Code of Virginia, 1950, § 38–238 (now Code 1950, § 38.1–380): "* * * No such policy shall be issued or delivered in this State, to the owner of a motor vehicle, by any corporation or other insurer authorized to do business in this State, unless there shall be contained within such policy a provision insuring such owner against liability for damages for death or injuries to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner * * *."

3.         "August 29, 1952
"Dear Sir:
"To Whom This May Concern, I hereby give my consent for my brother, George Winston Forbes, to drive my car, a 1946 Ford, 5-passenger coupe, wherever he wishes.
        Yours truly,
        /s/ J. L. Forbes"
This was acknowledged before a notary public. This consent and the insurance policy was required to obtain a permit for use of the automobile on the Base.

4. Janes obtained judgment in a Mississippi court against Cavanaugh for $3,000.00. This suit was reopened and defended by appellant under a non-waiver agreement.
This satisfied the "No-Action" clause requiring that "* * * The insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by writ-

Arguing first that the insurance contract was void for fraud of J. L. in misrepresenting that (a) George was an adult, and (b) J. L. was the true owner of the vehicle, the insurer also stoutly contends that J. L. was not the owner, hence had no insurable interest, so that no insurance was available to George regardless of the permission which J. L. might have given him; and, in any case, if J. L. was an assured, he did not clothe George with authority to permit others to use the vehicle and thereby extend coverage to successive users. We think none of these has merit.

█ First, the purchase of this automobile under these circumstances was a perfectly legitimate, good faith transaction. Since J. L. was liable, personally, on the financing notes and contract, and had himself a personal liability to pay the insurance premiums, it was a proper thing for him to retain the record title and legal ownership of the vehicle. This gave him an ample insurable interest.

█ It is equally plain that J. L. was purchasing the car for the use of his brother, George, and it was placed under his control. The nature of the permission impliedly granted by J. L., the legal owner of the vehicle, is, therefore, to be measured in the light of the purpose for which the car was turned over to George. Here, with ample grounds, the District Court found that J. L. intended that George was to use the car as though it were his own. Of course, in this automobile age, a common thing for an automobile owner is to loan the car to friends,

business associates, acquaintances, and others for personal use of the permittee wholly unrelated to the business or interest of the vehicle owner. Since it was intended that George should use the car freely as though it were his, it was a normal and expected thing for him to lend it to his fellow-marine.

██ If this is to extend coverage to permittees, third or fourth removed, the insurer need but recall that the policy is its contract in words chosen by it, the scope of which is sufficient to clothe the named insured with full authority automatically to make the insurance available to all who might use the car, provided only that his intention is adequately reflected concerning the right of the permittee and successive permittees to allow others to use the vehicle. The permission can be implied as well as expressed. Procuring the car for George to enjoy as his own and permitting him to use it freely at a Base 900 miles away, is quite sufficient to justify the conclusion that George had J. L.'s consent to permit anyone he chose to use or drive the automobile. Nor, do we think, that the written permission either did, or was intended to, restrict or withdraw the full scope of this permission. It was to satisfy the requirements of the military, presumably for instances such as this in which the serviceman desired to operate, on the base, a vehicle owned by and registered in the name of another.

█ Applying, as we must, Virginia principles, these conclusions are fully supported [5] by Virginia decisions giving

ten agreement of the insured, the claimant and the company * * *," if under, the Omnibus Clause and the Virginia Statute, Cavanaugh was an "insured."

5. It is aptly summarized by a court familiar with Virginia jurisprudence in American Auto Ins. Co. v. Fulcher, 4 Cir., 201 F.2d 751, 756: "It is settled law that the question of implied permission is one of fact, to be resolved by the jury or the court sitting as the trier of fact. Moreover, the Virginia decisions make it clear that the statutes applicable to the present controversy, being remedial

in nature, are to be liberally construed to subserve the public policy manifest therein. See Fidelity & Casualty Co. of New York v. Harlow, 191 Va. 64, 68, 59 S.E.2d 872, 874; State Farm Mutual Automobile Insurance Co. v. Cook, 186 Va. 658, 666, 43 S.E.2d 863, 867, 5 A.L.R. 2d 594. It is also evident that, to support liability predicated upon implied permission, it is not necessary that the owner of the automobile be aware of the indentity of the person operating it. Robinson v. Fidelity & Casualty Co. of New York, 190 Va. 368, 57 S.E.2d 93;

full voice to the statutory Clause Paramount.

 There was no basis at all for the charge of fraud based on George's minority, nor, under the findings, was there a misrepresentation as to the ownership which in fact existed in J. L. J. L. claimed to be the owner. He was in law the owner and so he was in fact. As an owner for reasons entirely sufficient and legitimate, he purchased the automobile for the use of his brother who was expected to pay the cost of it, but it began, it continued, and it terminated as his, not George's property. Moreover, after all of these facts were fully known to the insurer as a consequence of the investigation of the Janes collision in March 1953, and after notice to J. L. Forbes of cancellation of the policy in April had become effective, the insurer, by paying a substantial amount to him as the collision loss sustained by the insured vehicle, affirmed the existence of a valid contract between it and J. L.; New Jersey Rubber Co. v. Commercial Union Assur. Co. of London, 64 N.J.L. 580, 46 A. 777; 29 American Jurisprudence, Insurance, §§ 874, 876, Cf. Home Ins. Co. of New York v. Hightower, 5 Cir., 22 F.2d 882, 62 A.L.R. 620, whatever might have been the significance of the retention of earned premiums both for the current and the original, expired, policy, cf. American Cent. Ins. Co. v. Antram, 86 Miss. 224, 38 So. 626, 628; Stonewall Life Ins. Co. v. Cook, 165 Miss.

619, 144 So. 217; 29 American Jurisprudence §§ 861, 862.

 Supported by findings not demonstrated to be clearly erroneous, Federal Rules of Civil Procedure, rule 52, 28 U.S.C.A.; Galena Oaks Corp. v. Scofield, 5 Cir., 218 F.2d 217, the judgment was right and is

Affirmed.

---

or know of the particular use being made of it at the time of the accident. Liberty Mutual Ins. Co. v. Tiller, 189 Va. 544, 53 S.E.2d 814."

See also Lumbermens Mutual Casualty Co. v. Indemnity Ins. Co., 186 Va. 204, 42 S.E.2d 298, 302, and Hinton v. Indemnity Ins. Co., 175 Va. 205, 8 S.E.2d 279, 283, which suggests that the statutory term "*permission,* express or implied," is broader than "consent" since, " * * * A permitted act may be one not specifically prohibited as contrasted to an act affirmatively and specifically authorized * * *"; Harrison v. Carroll, 4 Cir., 139 F.2d 427; United Services Automobile Ass'n v. Preferred Accident Insurance Co. of N. Y., 10 Cir., 190 F.

2d 404; cf. Pennsylvania Thresherman & Farmers' Mutual Casualty Ins. Co. v. Crapet, 5 Cir., 199 F.2d 850.

The statute, while *liberally* construed, yet requires *permission* and where, as a fact, none is given or it is exceeded, coverage is likewise restricted: e. g., Hartford Accident & Indemnity Co. v. Peach, 193 Va. 260, 68 S.E.2d 520; United States Casualty Co. v. Bain, 191 Va. 717, 62 S.E.2d 814; Lumbermens Mutual Casualty Co. v. Indemnity Ins. Co. of North America, supra; Sordelett v. Mercer, 185 Va. 823, 40 S.E.2d 289; Jordan v. Shelby Mutual Plate Glass & Casualty Co., 4 Cir., 142 F.2d 52; Continental Cas. Co. v. Padgett, 4 Cir., 219 F.2d 133.