# Richmond

## The Aetna Casualty and Surety Company v. James R. Anderson.

## The Aetna Casualty and Surety Company v. Ladislaus A. Czoka.

December 1, 1958.

Record Nos. 4850, 4851.

Present, All the Justices.

The opinion states the case.

*Edward R. Parker* (*Richard L. Williams; Bremner, Parker, Neal, Harris & Williams*, on brief), for the plaintiff in error.

*Edward L. Stehl, III*, for the defendants in error.

I'Anson, J., delivered the opinion of the court.

James R. Anderson and Ladislaus A. Czoka recovered judgments against Robert T. Taylor in the respective amounts of $800.00 and $4,000.00 as the result of injuries sustained in a collision with a truck owned by the Alliance Fertilizer Corporation and operated by Taylor, its employee.

Anderson and Czoka, not being able to collect their respective judgments against Taylor, brought separate actions against The Aetna Casualty and Surety Company to recover the amounts of their judgments upon its insurance policy covering the Alliance

Fertilizer Corporation truck at the time of the accident. Trials by jury resulted in verdicts for Anderson and Czoka against the insurance company in the amounts of $800.00 and $4,000.00, respectively.

The court overruled the defendant's motions to set aside the verdicts and over its objections entered judgments thereon. We granted writs of error to both judgments. They both involve the same question, and on the joint motion of the parties an order was entered that the judgment of this court in the case of *The Aetna Casualty and Surety Company* v. *Czoka* shall be controlling in *The Aetna Casualty and Surety Company* v. *Anderson* case.

Czoka is hereinafter referred to as the plaintiff, and The Aetna Casualty and Surety Company as the defendant, in accordance with their respective positions in the lower court.

Taylor was employed intermittently by the Alliance Fertilizer Corporation at its plant in Milford, Virginia, for several years as a truck driver, but at the time of the accident on March 21, 1952, he was employed by Alliance as a laborer in the plant. It was only during busy periods that Taylor was called upon to drive an extra truck. The truck was usually left at the plant at night, but when he did not get through with the deliveries before the plant's closing time he was directed to take the truck home and park it for the night. When the truck was kept at the driver's home overnight, a plant rule required that it be taken there and parked as soon as the driver completed deliveries and he was not to use it for his personal use. Taylor testified that he knew the plant rule and understood it; that as soon as he had delivered the fertilizer he knew he was to drive the truck to his home and park it for the night; that he had been told not to use the truck for his personal use; that he had not obtained permission to use the truck on the night of the accident and knew he was using it without authority; that he had used the truck some days to go to the store after first getting permission from Mr. Brooks, the plant manager, and that when his duty was that of truck driver, at the end of the working day he would sometimes give fellow employees a ride home from the plant, and at times stop by the store to let them pick up cigarettes. Brooks testified that he knew nothing of the stops made at the store by Taylor. He admitted that at times, when Taylor asked permission, he let him use the truck to go to the store at lunch time so he would not lose too much time from work.

Between four and four-thirty in the afternoon on the day of the accident Taylor was directed by Brooks to take James Childs, a fellow employee, to his home and there deliver a load of fertilizer. The time required for Taylor to fulfill his mission would normally have been approximately thirty-five minutes. The distance from the plant to Childs' home is approximately three miles. To reach Childs' home Taylor traveled along a route which carried him by his home, the home of Carrie Collins, his sister, and a store. The truck was stopped at the store and Childs went in to buy some beer while Taylor waited in the truck. They then delivered the fertilizer to Childs' home and came back over the same route about one-half of a mile to the Collins home where they drank beer and Childs became intoxicated. Taylor left the Collins home to take Childs back home in the Alliance truck when the accident occurred at 8:30 that night. Taylor was arrested at the scene of the accident for driving a motor vehicle under the influence of intoxicants. Brooks had a warrant issued charging Taylor with unauthorized use of the truck. On both of these charges he was convicted in the trial justice court of Caroline County, Virginia, on his pleas of guilty.

The defendant's principal contentions in its assignment of errors are as follows: (1) That the court erred in overruling the defendant's special plea setting out that Taylor's plea of guilty to and his conviction of unauthorized use of the truck in the trial justice court conclusively determined that Taylor did not have permission of Alliance to drive the truck at the time of the accident and that the conviction was a bar to this action; and (2) that as a matter of law Taylor did not have his employer's express or implied permission to drive the truck at the time of the accident and that the trial court erred in not sustaining defendant's motion to strike the plaintiff's evidence.

■ The defendant first contends that this action is barred by Taylor's plea of guilty to and conviction of unauthorized use of the truck of the insured.

The general rule is that a judgment rendered in a criminal prosecution, whether of conviction or acquittal, does not establish in a subsequent civil action the truth of the facts on which it is rendered or constitute a bar to a subsequent civil action based upon the offense on which the party stands convicted or acquitted. *Supervisors v. N. & W. Ry. Co.,* 119 Va. 763, 785, 786, 787, 91 S. E. 124, 132;

30A Am. Jur. §§ 473 and 474, pp. 512, 513, 514; 2 Freeman on Judgments, 5th ed., § 653, pp. 1376-1379.

Some of the reasons for the rule are as follows: (1) The parties are different in a criminal proceeding from those in a civil action; (2) the objects of the two proceedings are different; (3) the results and procedures of the two trials are different; and (4) there is a lack of mutuality. The reasoning is based on the old common law maxim, *res inter alios acta nocere non debet*—a transaction between two parties ought not to operate to the disadvantage of a third. 30A Am. Jur. §§ 475, 476, pp. 514, 515, 516, 517. See also Anno. 18 A. L. R. 2d 1287.

The rule, however, is subject to some exceptions and limitations. *Eagle, Star, Etc., Ins. Co.* v. *Heller*, 149 Va. 82, 140 S. E. 314, 57 A. L. R. 490.

In support of its contention the defendant relies upon the case of *Eagle, Star, Etc., Ins. Co.* v. *Heller, supra*, in which this court held that proof of a conviction of arson was admissible in evidence as a bar to the action instituted by Heller to recover on an insurance policy covering the very property he was convicted of burning. The court said that a rigid adherence to the general rule excluding evidence of a previous conviction, as tending to show the truth of the facts upon which it was based, would be a reproach to the administration of justice where it resulted in permitting recovery under a fire insurance policy by an insured who had been convicted of wilfully burning the same property with intent to injure the insurer. The court in arriving at its decision applied a logical exception to the general rule based on the facts of the case. But there is no good reason for a recognition of an exception to the general rule in the case at bar. For note on subject see 39 Va. L. Rev. 995.

The judgment against Taylor in the criminal proceeding is not a bar to this action since the parties are not the same and there is a lack of mutuality. In 2 Freeman on Judgments, 5th ed., § 428, p. 929, the general rule is stated as follows:

"* * * *Rule as to Mutuality.*—No party is, as a general rule, bound in a subsequent proceeding by a judgment, unless the adverse party now seeking to secure the benefit of the former adjudication would have been prejudiced by it if it had been determined the other way. And conversely, if the judgment binds one party it binds the other, even though he was successful in the litigation. The operation of

estoppels must be mutual. Both the litigants must be alike concluded, or the proceedings cannot be set up as conclusive upon either.' "

See *Anderson* v. *Sisson,* 170 Va. 178, 182, 196 S. E. 688, 689; *Rhines* v. *Bond,* 159 Va. 279, 283, 284, 165 S. E. 515, 516, 517; *Ferebee* v. *Hungate,* 192 Va. 32, 36, 37, 63 S. E. 2d 761, 764.

The special plea was properly overruled by the trial judge.

■ The defendant contends in his second assignment of error that Taylor as a matter of law did not have permission, express or implied, to use the truck at the time of the accident.

Since the accident occurred on March 21, 1952, the applicable statute is § 38-238, Code of 1950.[1]

This statute made it mandatory for every automobile liability insurance policy sold in Virginia to contain an "omnibus clause" extending the same coverage as that given the named insured to one legally operating the motor vehicle with the permission, express or implied, of the owner. *Lumbermens Mut. Cas. Co.* v. *Indemnity Ins. Co. of North America,* 186 Va. 204, 213, 42 S. E. 2d 298, 302.

It is well settled under the decisions of this court interpreting § 38-238, Code of 1950, that the statute was enacted for the benefit of a party who has suffered damages resulting from the negligent use of an insured's motor vehicle when operated by another, with permission, express or implied, of the owner. Liability is not limited to the acts of negligence in the operation of the motor vehicle in the business of the owner or otherwise. *Liberty Mutual Ins. Co.* v. *Tiller,* 189 Va. 544, 548, 549, 53 S. E. 2d 814, 816; *Liberty Mutual Ins. Co.* v. *Venable,* 194 Va. 357, 360, 73 S. E. 2d 366, 368.

■ The evidence does not show that Taylor had express permission to drive the truck at the time of the accident. The express permission from Brooks to Taylor was to deliver the fertilizer, take the truck to his home and leave it for the night. Did Taylor have implied permission to drive the truck at the time of the accident?

In *Hinton* v. *Indemnity Ins. Co.,* 175 Va. 205, 213, 214, 8 S. E. 2d

---

[1] "No such policy shall be issued or delivered in this State, to the owner of a motor vehicle, by any corporation or other insurer authorized to do business in this State, unless there shall be contained within such policy a provision insuring such owner against liability for damages for death or injuries to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner." (Title 38 was repealed by Acts of 1952, c. 317, p. 422, and a new title 38 was enacted, this section being codified as section 38.1-381, 1952 Cum. Supp., Code 1950, amended 1958, c. 282.)

279, 283, this court said: "Under the Virginia Statute, the permission of an assured in a liability insurance policy, to bind the insurance company, may be either express or implied. To be express, it must be of an affirmative character, directly and distinctly stated, clear and outspoken, and not merely implied or left to inference. On the other hand, the correlative word 'implied,' as defined in Webster's New International Dictionary 2d ed., means 'inferential or tacitly conceded.' It involves an inference arising from a course of conduct or relationship between the parties, in which there is mutual acquiescence or lack of objection under circumstances signifying assent. An implied permission is not, therefore, confined alone to affirmative action." See also *Hartford Accident, Etc., Co.* v. *Peach*, 193 Va. 260, 266, 68 S. E.2d 520, 523; *State Farm Mut., Etc., Ins. Co.* v. *Cook*, 186 Va. 658, 667, 43 S. E. 2d 863, 867, 5 A. L. R. 2d 594, 599.

"The word 'permission' has a negative rather than affirmative implication; that is, a permitted act may be one not specifically prohibited as contrasted to an act affirmatively and specifically authorized * * *." *Brower* v. *Employers' Liability Assur. Co., Ltd., Etc.* (1935), 318 Pa. 440, 177 A. 826, 829.

The trial judge in a written opinion held that whether Taylor had implied permission to use the truck presented a jury question since there was a conflict in the testimony of Taylor with that of Brooks. With that statement we do not agree.

The record clearly shows that Taylor's and Brooks' testimony as to the permission granted Taylor is entirely consistent. Both agreed the plant rule required Taylor to drive the truck to his home and park it as soon as he had delivered the fertilizer. Both agreed that Taylor was not to use it for his own personal use. Both agreed that Taylor had used the truck to go to the store, usually at lunch time, if, and only if, specific permission was first obtained from Brooks. Both concurred as to specific authority granted to Taylor on the night of the accident. Taylor testified he knew that he had no authority to drive the truck at the time of the accident because he had not obtained permission. Both agreed that Taylor had never been allowed to use the truck for his own pleasure on a trip totally unrelated to the interests of the company. Brooks agreed that he had not specifically told Taylor not to make stops on his way home from work, but did not know that he had ever made stops. The general prohibition against using the truck for personal reasons without per-

mission would include the specific instructions not to make stops on the way home, particularly when the stops were of a three-hour duration and for the purpose of drinking beer. There was no factual conflict as to permission granted, either express or implied, which should or could be resolved by a jury.

This case in many respects is not unlike *Fidelity & Casualty Co. of N. Y.* v. *Harlow*, 191 Va. 64, 59 S. E. 2d 872. In that case Swoope, an employee of Tidewater Express Lines, had worked for his employer for more than a year and had driven the same tractor-trailer more than 20,000 miles. It was customary for him to drive the tractor-trailer home and park it over week ends and some nights during the week. He was told not to detach the tractor from the trailer, and not to use it for his personal use. When he did use the tractor for his personal use he tried to conceal the fact. At the time of the accident he was driving the tractor for his own personal pleasure with a girl and a man as passengers. Under these facts we held, as a matter of law, that the employee did not have implied permission to use the tractor.

In the case at bar Taylor's permission was limited to taking Childs home and delivery of the fertilizer, and as soon as delivery was made to drive the truck to his home, park it, and leave it until morning. He had been told that he was not to use the truck for his own use. He admitted that he knew it was necessary to obtain permission to use the truck at the time of the accident and that he had not received such permission.

In *Sordelett* v. *Mercer*, 185 Va. 823, 40 S. E. 2d 289, 294, we held that an employee who was given express permission to use a truck in order to get his supper had no permission to use it to find a girl friend for a fellow worker. "Permission to do a specific thing is not permission to do all things." To the same effect see *Phoenix Indemnity Co.* v. *Anderson*, 170 Va. 406, 414, 196 S. E. 629, 633; *Hartford Accident, Etc., Co.* v. *Peach, supra* (193 Va. at p. 266).

■ The plaintiff contends that permission may be implied from the course of conduct or relationship existing between Taylor and Brooks and that the evidence presented a jury question. He relies on *State Farm Mut., Etc., Ins. Co.* v. *Cook, supra, Liberty Mutual Ins. Co.* v. *Tiller, supra, Robinson* v. *Fidelity, Etc., Co.*, 190 Va. 368, 57 S. E. 2d 93; and *Hinton* v. *Indemnity Ins. Co., supra.*

In *State Farm Mut., Etc., Ins. Co.* v. *Cook, supra*, the employee was permitted to take the truck and keep it overnight at his home. On

occasions he used the truck to get groceries for himself. His employer saw him on one occasion making use of the truck, which he did not forbid. He never told him not to use it for his own purposes. Since the accident he had continued to take the truck to his home, and the only condition imposed by the employer was that if he used it in the future for his own purposes "it would be on his own hook." Under these facts and circumstances we held that the question of whether or not the employee had implied permission was for the jury.

In *Liberty Mutual Ins. Co.* v. *Tiller, supra,* the owner permitted the employee to keep the truck at his home nights. He was never instructed not to use it for his own use and the owner saw him use it without objection. Under these facts we held it was for the jury to say whether the employee had implied permission to use the truck.

In *Robinson* v. *Fidelity, Etc., Co., supra,* the owner of the automobile was in the Merchant Marine and he left his car with a girl friend who was generally known as his wife. The only thing he told her about the use of the car was that he didn't want to come back and find it wrecked. At the time of the accident one Beasley, a friend of the girl, was returning the automobile to her from a garage where some repair work had been done on it. We held that the question of whether the driver had implied permission was a jury question.

In *Hinton* v. *Indemnity Ins. Co., supra,* a salesman, whose father was a vice-president of a company, had the general use of the company car. The salesman allowed a friend of his to use the car one evening to fulfill an engagement with a lady friend. The friend at the time was a guest in the salesman's home. The friend had used the car a number of times on other occasions. On the evening of the accident plans were discussed in the presence of the officer of the company which required his driving the car and he took it with the express permission of the salesman. The officer of the company made no objection to his using it, although he took the key of the car in the presence of the officer. We held the facts presented a question for the jury to say whether there was implied permission.

The evidence in the above cases shows a course of conduct which amounted to a mutual acquiescence or lack of objection signifying consent and implied permission. It is clearly evident that there is an entirely different factual situation in the case now before us. Taylor was told not to use the truck for his own personal use.

Permission to use it was granted to him only when it was to be operated in the interest of company business. There are no circumstances from the evidence that indicate Brooks ever acquiesced in or failed to object to the use of the truck by Taylor for his personal use.

Plaintiff argues that since Taylor made stops at the store when he took employees home from the plant he had implied permission to stop by the store, the Collins home, and to afterwards drive a fellow employee home. The evidence is that Brooks had no knowledge of any stops made by Taylor when he was given permission to use the truck, other than those he was specifically authorized to make. There could be no mutual acquiescence in or objection by Brooks to something he knew nothing about. Therefore, the elements of implied permission are lacking.

In cases interpreting the meaning of the omnibus clause in insurance policies some courts have adopted the view that if the bailee was granted permission to use a motor vehicle in the first instance any use while in his possession is within the insured's implied permission. For a collection of cases adopting this view see 5 A. L. R. 2d, Anno., p. 629.

We have rejected that view. In *State Farm Mut., Etc., Ins. Co.* v. *Cook, supra,* (186 Va. at p. 665) we said that in Virginia we "adhere to a somewhat stricter construction and hold that before the person using the automobile becomes an additional assured under the omnibus clause, permission must be expressly or impliedly given for that use." See also *Fidelity & Casualty Co. of N. Y.* v. *Harlow, supra* (191 Va. at p. 72).

In addition to whether permission has been given a person using a motor vehicle at the time of an accident, there is the question in respect to the coverage under the omnibus clause where there has been a deviation from the permitted use. 5A Am. Jur. § 98, p. 99. See 5 A. L. R. 2d, Anno., p. 621.

Permission will not be implied from employer to employee where the employee goes off on an independent venture which is totally unrelated to the employer's business. *Phoenix Indemnity Co.* v. *Anderson, supra* (170 Va. pp. 413, 414); *Jordan* v. *Shelby Mut. Plate Glass Co.,* 4 Cir. 142 F. 2d 52.

In *Phoenix Indemnity Co.* v. *Anderson, supra,* dealing with the question of permission granted for a specific purpose, we quoted from *Drake* v. *Norfolk Steam Laundry Corporation,* 135 Va. 354, 363,

364, 116 S. E. 668, 671, as follows: "(1) Where the deviation is slight and not unusual the court may as a matter of law determine the servant was acting within the scope of his employment; (2) where the deviation is very marked and unusual, the court may determine that the servant was not acting within the scope of his employment; (3) where the facts leave the case between these two extremes, the question should be left to the jury."

Of course, the issue under § 38-238, Code of 1950, is not one of agency but one of permission. *Utica Mut. Ins. Co. v. Rollason,* 246 F. 2d 105.

The use of the truck by Taylor shows a very marked and unusual deviation in purpose, time and direction. He put it to a use radically different from that which he was authorized. The permission granted Taylor was to use the truck for the purpose of delivering fertilizer, not to go out on a beer drinking party and afterwards, while under the influence of intoxicants himself, proceed to drive a fellow employee home who was drunk. He kept the truck for his personal use more than three hours longer than was required to deliver the fertilizer and park it at his home. At the time of the accident he was traveling in a direction away from his home.

For these reasons we hold that the court erred in not striking the plaintiff's evidence. In each case the judgment will be reversed, the verdict set aside, and final judgment here entered for the defendant, The Aetna Casualty and Surety Company.

*Reversed and final judgment.*