410

## CIRCUIT COURT OF ARLINGTON COUNTY

Government Employees Ins. Co.

v.

Rebecca A. Oynes et al.

Case No. (Chancery) 26361

BY JUDGE CHARLES H. DUFF

February 1, 1977

This is an action for declaratory judgment seeking a determination of the rights and liabilities between Government Employees Insurance Company (GEICO), The Hartford Accident & Indemnity Co., and United Services Automobile Association. The complainant, GEICO, issued a policy of automobile liability insurance to one Chris C. Oynes, the husband of Rebecca A. Oynes, operator of the vehicle at the time of the collision. The Hartford Accident & Indemnity Co. had issued its policy of automobile liability insurance to one Gerald L. Werner, owner of the vehicle being operated by Rebecca Oynes. The United Services Automobile Association had issued a policy of automobile liability insurance which provided uninsured motorist coverage to Kathryn F. Baumann, a passenger in the vehicle operated by Rebecca A. Oynes. All three carriers deny that, under the facts and circumstances revealed by the evidence, their policies apply to any claims arising out of the collision. Evidence was presented by the testimony of various witnesses and depositions. All parties have submitted Memoranda addressing the legal issues presented, and the authorities cited therein have been carefully examined. A brief synopsis of the facts would place the issues in proper focus.

## I. *Synopsis of Facts*

On December 28, 1973, in the early morning hours, a vehicle owned by Gerald L. Werner and operated by Rebecca Oynes was travelling east on Spout Run Parkway. It left the roadway, struck an embankment and overturned, severely injuring Mrs. Oynes and the only passenger, Kathryn F. Baumann. Apparently, no other vehicle was involved.

At the time, Rebecca Oynes was married to Chris Oynes; however, they had been separated for approximately six weeks. Rebecca Oynes was residing in the home of Gerald and Elizabeth Werner, whom she had met some months earlier. She moved into the Werners' home at the time of her separation from her husband, and the evidence establishes that her intended stay was temporary. Mrs. Werner operated a gift shop, and Rebecca Oynes assisted her, without compensation, at the shop. The Werners owned, at all times material hereto, three automobiles, the one in question being a Plymouth. There was evidence that Rebecca Oynes used this automobile each day to open the shop and, on at least three or four occasions, used it for her own personal business. She contended that she was allowed its use at her discretion. Other evidence indicated that she always asked and received permission for its use, at least for her own personal endeavors.

On the evening of December 28, 1973, Rebecca Oynes and Kathryn Baumann asked Mrs. Werner for permission to use the car to go to a movie. Mrs. Werner testified that she inquired regarding the identity of the movie and the time it would be over. While not definitively established, there is some indication that the movie was playing at the Buckingham Theater on North Glebe road in Arlington. Mrs. Werner contacted her husband, Gerald Werner, and relayed the request for the use of the car. He agreed thereto. Thereafter, Rebecca Oynes and Kathryn Baumann left the Werner residence in the vehicle and went immediately to Georgetown in the District of Columbia. There is evidence that they went first to Nathan's Bar at approximately 8:00 p.m., then to another bar, Mr. Henry's. Kathryn Baumann conceded in testimony that she became "pretty drunk." At approximately 1:00 a.m., the girls left Georgetown and with Rebecca Oynes driving proceeded back into Virginia, where the accident occurred. Neither Rebecca Oynes nor Kathryn Baumann remember any of the details of the accident. Further pertinent facts will be mentioned in connection with the various issues presented.

## II. *Issues*

The policy issued by GEICO to Chris Oynes extended insurance coverage to Rebecca Oynes while she was operating the Werner vehicle provided that was a resident of the same household as her husband and her operation was within the scope of the permission granted by the owner. *See* Complainant's Exhibit 1 — GEICO's policy. The first issue presented as a consequence of her separation from her husband is whether she remained a resident of his household.

The Hartford policy issued to Gerald Werner contained the statutory omnibus clause. Those insured under this policy were the named insured and any resident of the same household, and also any other person using the automobile with the permission of the named insured "provided his actual operation is within the scope of such permission." Hartford contends that under the facts, Rebecca Oynes was not a "resident of the same household" as Gerald L. Werner and further that the actual use of the vehicle was for the deceitful purpose of going to Georgetown drinking and, accordingly, was not within the scope of the permission given by the named insured.

United Services Automobile Association, the uninsured motorist carrier for Kathryn Baumann, contends that Mrs. Oynes was a resident of her husband's household and, further, that the permission given by Gerald Werner for use of the car on the evening in question was sufficiently broad to encompass the actual use made thereof. In short, it denies the applicability of its uninsured motorist coverage and asserts the liability of both GEICO and Hartford. These issues will be considered in the sequence presented.

## III. *Resident of the Same Household*

The evidence disclosed that Rebecca Oynes and her husband were experiencing marital difficulties. She moved from the apartment which they occupied on November 11, 1973, and took her clothes and wedding gifts that had been given to her by friends and family. She did not take any of the furniture. She testified that she and her husband considered the separation to be a trial (p. 18, dep.); that a couple of times he brought over her mail; that he took her out to dinner on one occasion during the separation; that she called him several times at work for the purpose of "trying to break the ice a little bit." On the evening that she left, she testified that she fixed

dinner for her husband and they talked a little bit and she told him that she just had to get away for a while. She did not say that she was definitely leaving.

In *Lumbermen's Mutual Casualty Co. v. Continental Casualty Co.*, 387 P.2d 104, a wife had filed for divorce and the husband had moved to another locale but was attempting a reconciliation. He slept and ate elsewhere but returned on occasions to the wife's home. During the separation, the wife was killed while driving a car rented by a third party. The issue presented was whether the wife was a resident of the same household. Lumbermen's position was that "resident of the same household" should be interpreted as including only persons living under the same roof with the named insured. In rejecting this argument, the Court commented:

> If either of them was eating or sleeping away from the family residence for a temporary period of time with the intention of returning, it could not ordinarily be said that their usual residence had been abandoned in favor of the temporary arrangement. Temporary absences frequently occur in the normal household because of family emergencies, business requirements, vacations, and for a variety of other reasons. It would seem that the policy provision under consideration was specifically designed to cover such situations and provide protection while the absent person happened to be operating a non-owned automobile. If the provision was given the restricted interpretation urged by Lumbermen's, protection would not extend to any situation where the spouse or relative was temporarily not eating or sleeping in the same house as the insured. Such an interpretation of the meaning of the clause would be narrower than that intended by the policy in our opinion.

In *Hawaiian Insurance and Guaranty Co. v. Federated American Insurance Co.*, 534 P.2d 48, addressing the identical issue the Court held as follows:

> From the cases which have dealt specifically with coverage during the period that one spouse has separated from the other, the basic inquiry is whether the separation was intended to be permanent without the prospect of reunion or temporary with reconciliation a possibility. Coverage

continues where a spouse leaves in hope that a reconciliation may take place, but where the fixed intent is to depart permanently and reconciliation is not contemplated, coverage ceases.

For similar holdings, see *Belling v. Hain*, 221 N.W.2d 888; *Herbst v. Hansen*, 176 N.W.2d 380; *American Casualty Co. v. Harleysville Insurance*, 208 A.2d 597, and *Aetna Casualty & Surety Co. v. Miller*, 276 F. Supp. 341 (D. Kan. 1967).

There was no evidence that the Oynes separation was absolute and irrevocable. No legal action had been filed, and Mrs. Oynes herself testified that she only made up her mind that she was not going back to her husband after the accident in question. (See p. 38, dep.) Clearly, GEICO's risk was hardly different than it would have been had Mrs. Oynes been away from her home on business or vacation or because of some family emergency and was driving a non-owned automobile. Accordingly, on this issue, it is my opinion that at the time of the accident, Mrs. Oynes was a resident of her husband's household within the meaning of that term as used in the GEICO policy.

### IV. *Was Rebecca Oynes A Resident of the Same Household As Gerald Werner?*

As indicated, Rebecca Oynes was offered temporary lodging and hospitality by the Werners. The evidence, in my opinion, conclusively establishes that she was simply a guest in the Werners' home. Mrs. Werner so testified. She intended to remain there until she secured a job and had saved sufficient money to make a deposit on an apartment of her own. She had, in fact, on the day of the accident secured such a job. She brought to the Werners only clothes, toiletries and art supplies. She slept in a makeshift room in the basement; her mail was not rerouted to the Werners. There is a total paucity of any indicia of permanence in her stay with the Werners.

In *State Farm Mutual v. Smith*, 206 Va. 280 (1965), our Supreme Court commented as follows:

> The word "household" . . . connotes a settled status; a more settled or more permanent status is indicated by "resident of the same household" than would be indicated by "resident of the same house or apartment." We inter-

pret the language of the policy as excluding coverage if Elaine R. Mellow had remained a resident and had become so intertwined with the Frost family as to become a member of that family.

It is the Court's opinion that while she stayed with the Werners, Mrs. Oynes was a non-paying boarder or guest to whom was accorded considerable hospitality until such time as she could support herself. She was not a "resident of the same household" of the named insured under the Hartford policy.

### V. *Permissive Use*

There is no question that the two girls requested the use of the car from Mrs. Werner, who in turn relayed the request to her husband, who approved it. The critical issue is presented by paragraph (a)(2) of the Hartford policy which extends coverage of the owned automobile to "any other person using such automobile with the permission of the named insured *providing his actual operation . . . is within the scope of such permission*" (italics added). Hartford contends that the actual use was without the scope of the permission. USAA contends to the contrary. An examination of the evidence is necessary.

Kathryn Baumann testified that she told Beth (Mrs. Werner) that they wanted to go to a movie. She candidly said that she was purposely vague in giving details of their plans because she was afraid that if she had stated they were going drinking, Beth would not have permitted use of the car.

Rebecca Oynes denied that they had preplanned the trip to Georgetown. She said that she asked for the car and told Beth that "we may go to a movie." Mrs. Werner testified that the girls asked if they could use the car to go to see a movie. She further inquired where the girls were going and when the movie would let out. There was some discussion also of getting something to eat.

Mr. Werner confirmed that his wife called him and told him that the girls had asked permission to use the car to go to a movie. He thought there was some discussion about the Buckingham Theater. He testified positively that he would not have allowed the use of the car if he had known that the girls were going to Georgetown drinking, rather than to a movie.

Of significance is Mrs. Werner's testimony that after the accident and while Kathryn Baumann was recuperating in the hospital, the

latter told her that she and Rebecca Oynes had been planning to go to Georgetown for a long time and that they never really intended to go to the movie. This evidence is corroborated by the deposition of Anna D. Witz, who was a roommate of Kathryn Baumann in the hospital. She stated that Kathryn Baumann told her that they had borrowed the car *after* the plans were made to go to Georgetown.

Conceding some conflict or vagueness in the evidence as to precisely what was said at the time permission was given, the evidence preponderates in support of the finding that there was a deliberate attempt to conceal the true use to be made of the car on the night in question. This becomes significant in view of the evidence of a prior occasion where Kathryn Baumann had become intoxicated at the opening of the Werners' gift shop. Both Werners were concerned about Kathryn's drinking.

Where a deviation from the permission granted by the owner is found, the law generally applies one of three rules to determine the legal consequence thereof: (1) the "strict" or "specified purpose" rule holds that any deviation of time, place or use other than the permission given will defeat coverage; (2) the "liberal" rule holds that once permission is given, almost all subsequent use, although unauthorized, is deemed within that permission; (3) between these two rules is the moderate or "minor deviation" rule which in essence holds that a minor or slight deviation from permission will not defeat coverage; a major or significant deviation will. *See*, 12 Couch on Insurance 2d 450, "Effect of Deviation from Permission."

In *State Farm Mutual Automobile Insurance Co. v. Cook*, 186 Va. 658 (1947), an employee was permitted to take a truck home and keep it overnight. He had permission to use it for his own purposes and was seen by his employer making such use of the truck. On the night in question, he had taken the truck to a beer parlor, after which the accident occurred. Under these facts and circumstances, the Court held that the question of whether or not the employee had implied permission was for the jury.

In *Aetna Casualty & Surety v. Anderson*, 200 Va. 385 (1958), an employee was given permission to take a company-owned truck home at night. Company policy forbade use of the truck for the employee's personal benefit. In violation thereof, the employee used the truck to go to a friend's house and while there consumed a number of beers. The court held that because of the express company policy that forbade personal use, there could be no implied permission.

In *Sordelett v. Mercer*, 185 Va. 823 (1946), an employee who was given express permission to use a vehicle in order to get his supper had no permission to use it to find a girl friend for a fellow worker. The Court stated: "Permission to do a specific thing is not permission to do all things." To the same effect, *see Phoenix Indemnity Co. v. Anderson*, 170 Va. 406 (1938); *Hartford Accident and Indemnity Co. v. Peach*, 193 Va. 260 at p. 266 (1952).

In *Collins v. New York Casualty Co.*, 82 S.E.2d 288, the Supreme Court of Appeals of West Virginia considered the precise question on facts strikingly analogous to those at bar. The owner of the vehicle had given permission to the driver for a specific short trip to the city, and the vehicle was to be returned within an hour. The driver had met a friend in town and went to an establishment outside of the city where he began to drink beer. Later in the evening, he started back to the city where the accident occurred. In aligning West Virginia with the slight deviation rule, the Court commented as follows:

> The slight deviation rule is based upon the premise that policies of insurance where ambiguous should be construed and where unambiguous should be applied to effectuate the intention of the parties, and where the deviation is such as was not contemplated by the insured and one to which in the first instance *the insured would be presumed not to have assented*, the coverage afforded by the omnibus clause of the automobile public liability insurance policy terminates. (Underlining added.)

In citing *Aetna Casualty and Surety Co. v. Anderson, supra*, 12 Couch on Insurance 2d 463 observes that Virginia has rejected the so-called liberal rule and adheres to a somewhat stricter construction.

Of final concern, then, is whether the deviation in the present case was minor or of significance. In view of my belief from the evidence that permission was secured by purposeful deceit; that Mr. Werner was justifiably concerned over Kathryn Baumann's drinking and that he would not have given permission had he known such to be the plans for the evening, I am of the opinion that this represents a major or significant deviation from permission merely to go to a movie. Accordingly, the actual use of the car at the time of the accident was

such as to exclude the coverage of Hartford's policy as well as GEICO's policy under the terms of its definition of insured.

It is my holding that in her operation of the vehicle, Rebecca Oynes was an uninsured motorist at least to the extent of those two policies.

### March 29, 1977

Subsequent to the court's Memorandum of February 1, 1977, defendant United Services Automobile Association filed a Motion to Reconsider. The Motion was argued March 25, 1977, and raises essentially the question of the definition of "persons insured" with respect to a non-owned automobile under the terms of the policy issued to Mr. Oynes by GEICO. The prior holding was that Mrs. Oynes's operation of the Werner vehicle was without the permission of the owner, thus excluding the coverage of both the Hartford policy and the GEICO policy. In its present motion, GEICO asserts that with respect to a non-owned automobile, the named insured is provided coverage regardless of whether the operation of the vehicle is with the permission of the owner. Authorities have been submitted and carefully examined, and the precise wording, typography and positioning of the language of the GEICO policy has again been reviewed.

This issue has been considered by a number of appellate courts in recent years, the latest apparently being the decision of *State Automobile Mutual Insurance Company v. Williams*, 302 A.2d 627 (Maryland 1973). The "persons insured" clause involved therein appears identical with the GEICO policy. In reversing the trial court and holding that the "provided" clause applies to both paragraphs (1) and (2), the Maryland court observed as follows, which comments are equally applicable to the case at bar:

> In reading the definition of "persons insured," in light of the authorities reviewed earlier, we attach particular significance here to the followings:
>
> (i) The contract between the arrangement of the disputed permission provision applicable to "(b) . . . non-owned automobile" and that of the qualifying proviso in (a)(2). In the latter instance, the proviso, being intended to apply only to (2), is separated by only one space from the preceding part of (2); and the portion that is on the next line is aligned with the three lines above it; and

(ii) The contested permission proviso in (b) does not continue, separated by a single space, after the word "trailer;" and

(iii) The three lines of the permission proviso are aligned directly beneath the first word in "(b) with respect to a non-owned automobile." In fact, those three lines are the only ones in (a) or (b) that extend into the left-hand margin. As such, they are conspicuous and clear to the policyholder.

Similarly, see *Bright v. Ohio Casualty Insurance Company*, 444 F.2d 1341 (6th Cir. 1971).

The cases cited by United Services Automobile Association have likewise been carefully examined but are not persuasive in view of the different positioning of the language of the clause under consideration.

Accordingly, I am of the opinion that the particular clause involved in the GEICO policy is unambiguous, and the proviso requiring permission of the owner is applicable to both paragraphs (1) and (2) which appear immediately above it.