# Richmond

HARTFORD ACCIDENT & INDEMNITY COMPANY v. JAMES H. PEACH.

January 21, 1952.

Record No. 3853.

Present, Hudgins, C. J., and Eggleston, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Rixey & Rixey,* for the plaintiff in error.

*A. A. Bangel* and *James G. Martin & Sons,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

On April 19, 1947, James H. Peach was injured in a collision between a car driven by him and another owned by John M. Fleming and operated by G. M. Walker. Subsequently Peach recovered a judgment in the Circuit Court of Norfolk County against Walker in the sum of $15,000 for damages for his injuries. Execution on the judgment being unavailing, Peach instituted the present suit against Hartford Accident & Indemnity Company, alleging that by virtue of a policy which it had issued covering the automobile driven by Walker, the insurance company was liable in the amount of $5,000, the stated limit in the policy, on account of the judgment which he (Peach) had recovered against Walker. This action resulted in a verdict and judgment in favor of Peach against the insurance company and the matter is before us on a writ of error granted the insurance company.

There is no dispute as to the material facts. On January 29, 1947, the Hartford Accident & Indemnity Company, through its agent at Wilkes-Barre, Pennsylvania, issued its automobile liability insurance policy insuring a 1934 Dodge automobile which was owned by John M. Fleming and registered in Pennsylvania in his name, covering "bodily injury liability" to a single person in the sum of $5,000. The policy stated the "Name

of Insured" to be Mrs. Fleming rather than her husband. This was upon the advice of the local agent of the insurance company who suggested that it would enable her to take care of any insurance matters which might arise while her husband, who was in the naval service, was at sea.

The policy contained the following extended or omnibus coverage clause which is the basis of the present action:

*"Definition of 'Insured.'*

"The unqualified word 'Insured' wherever used in coverages A and B and in other parts of this policy, when applicable to such coverages, includes the named Insured and, except where specifically stated to the contrary, also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named Insured. The insurance with respect to any person or organization other than the named Insured does not apply: * * * to any person or organization, or to any agent or employee thereof, operating an automobile repair shop, * * * with respect to any accident arising out of the operation thereof; * * * ."

About the middle of February the Flemings moved their residence from Pennsylvania to Virginia, residing first in Portsmouth and later in Norfolk County in a suburb of the city of Norfolk. Fleming used the automobile principally as a means of transportation between his residence and his ship, the U. S. S. Freemont on which he was chief quartermaster, and which was stationed at the Naval Operating Base at Norfolk.

Walker was likewise attached to the U. S. S. Freemont with the rank of chief motor machinist mate, and he and Fleming had their meals together in the "Chiefs' Quarters" on the ship. A machinist under Walker had previously done some work on the Fleming car which had proven unsatisfactory, in that the valves were sticking. Fleming told Walker of his dissatisfaction with this repair work and Walker offered "to fix the car."

Fleming spoke to his wife about Walker's offer to repair the car. She did not approve of the plan, preferring that the car be taken to a commercial mechanic. However, this objection on her part was not pressed and the arrangement whereby Walker was to do the work was finally entered into.

Walker did not appear at the trial of either suit and the

evidence as to the arrangement between him and Fleming comes only from the testimony of the latter.

On Saturday, April 19, 1947, about noon, while the two men were on board their ship which was tied up at a pier at the Naval Operating Base, the matter was discussed again. Since Walker was "flat broke" and was not going on leave for the week end, he offered to repair the car. Fleming's duties required him to be on the ship over the week end and it suited his convenience that the work be done then. Accordingly, Fleming gave Walker the keys to the car and $10 with which to buy valves should they be needed.

At the time the car was turned over to Walker it was on a parking lot near the dock within the Naval Operating Base. There was no express understanding between the men as to when the work was to be done, or where the valves, if needed, were to be obtained by Walker. As Fleming said, "That was up to him. I didn't know exactly where to get them, whether he would have to get them on the Base or whether he could get them in town, I didn't know."

Fleming testified that Walker did not ask him for "permission to use" the car for his own purposes, nor did he (Fleming) grant such permission. "Nothing was said one way or the other about [his] driving it."

When asked whether Walker "had to take the car out and drive it around to determine whether or not it needed any valves," Fleming's reply was, "No sir, I don't think he did." "I don't know."

About 11 o'clock p. m. on the day on which Walker received the keys to the car the collision occurred which is the basis of this suit. At the time Walker was driving the Fleming car westwardly along Taussig boulevard, a city street outside the Naval Operating Base but adjacent thereto. The undisputed evidence is that he was then under the influence of intoxicating liquor. The purpose of the trip on which Walker was then bound is not disclosed in the evidence, nor is it shown when the car was driven from the government reservation or where Walker had been. It developed, however, that he had done no work on the car, had not purchased the valves, and subsequently returned to Fleming the $10 which the latter had given him.

When the accident was first reported to the insurance com-

pany it denied coverage for Walker under the policy and declined to defend the suit which Peach brought against him.

There was no personal service of process upon Walker, nor did he appear or file any pleadings in the original suit. Substituted service was had on him by delivering a copy of the notice of motion to the Director of Motor Vehicles, as his statutory agent, under section 23 of the Motor Vehicle Code of Virginia, as amended by Acts of 1938, ch. 26, p. 28. Michie's Code of 1942, § 2154 (70) (i).[1]

In our view of the matter the only question we need consider is whether at the time of the accident the "actual use of the automobile" by Walker was "with the permission of the named insured" within the meaning of the omnibus coverage clause of the policy.

■ It is universally held that the "permission of the named insured," within the meaning of such a clause, need not be express but may be implied. 5 Am. Jur., Automobiles, § 537, p. 807; 45 C. J. S., Insurance, § 829(b), p. 896.[2]

■ There is no merit in the contention of the insurance company that since Mrs. Fleming, who was the "named insured" in the policy, expressed disapproval of the suggestion that Walker be permitted to work on the car, her husband was not in a position to give Walker implied permission to use it.

As has been said, at the time the policy was written the agent for the insurance company knew that Fleming and not his wife was the owner of the car and the real insured. If any permission from Mrs. Fleming were necessary, her husband, as the owner of the car and entitled to its control, had full authority to grant permission to Walker to repair the vehicle. While she did object to the arrangement, preferring to have the work done by a regular mechanic, she did not insist upon her objection.

The crux of the case, then, is whether there is sufficient evidence to support the finding that the "actual use of the automobile" by Walker at the time of the accident was with the implied permission of Fleming.

■ ■ The burden of proof was, of course, on the plaintiff,

---

[1] The statute with further amendments is carried into the Code of 1950 as sections 8-67.1 and 8-67.2.

[2] See Code, § 38-238, which requires the incorporation in an automobile liability policy "issued or delivered in this State" of a provision extending coverage to "any person legally using or operating" a motor vehicle "with the permission, express or implied," of the insured owner.

Peach, to bring himself within the coverage clause of the policy and show that such "actual use" was with Fleming's permission. Here "actual use" means the particular use at the time in question. *Laroche* v. *Farm Bureau Mut. Automobile Ins. Co.,* 335 Pa. 478, 7 A. (2d) 361, 363; *Conrad* v. *Duffin,* 158 Pa. Super. 305, 44 A. (2d) 770, 772. Since, admittedly, there was no express permission for such use, the plaintiff was bound to show an implied permission.

In our opinion the plaintiff, Peach, has not sustained the burden imposed upon him.

When the car was delivered to Walker for the purpose of repairing it, this constituted a bailment for the mutual benefit of the parties. It was a bailment for a special purpose and any acts coming within such purpose were within the scope of the bailment. *Brower* v. *Employers' Liability Assur. Co.,* 318 Pa. 440, 177 A. 826, 827. Conversely, any acts not within such purpose were without the scope of the bailment.

While, as Fleming said, it was "up to him" (Walker) when and how the work was to be done, the undisputed evidence is that Walker did nothing toward carrying out the purpose of the bailment. He did no work on the car and purchased no parts for it, although he had been furnished money for the latter purpose. There is not the slighest evidence that the trip on which he was bound at the time of the accident, at 11 o'clock p. m., and while he was intoxicated, was in any way connected with his contract of bailment.

Assuming, but not deciding, that there is a presumption that any use which the bailee makes of the car is within the scope of the bailment, such presumption is overcome in the case here by the circumstances just stated which are established by uncontradicted evidence.

The conclusion is inescapable that at the time of the accident Walker was on some venture of his own. This constituted a clear deviation from the contract of bailment and the specified purpose for which the car was delivered to him.

There are cases which hold that where the bailee receives permission to take the vehicle in the first instance, any use while it remains in his possession is with the implied permission of the bailor, although that use may be for a purpose not contemplated by the bailor at the time he parted with possession of the vehicle. As applied to an insurance contract, if the original taking was

with the insured's consent, every act subsequent thereto while the bailee is driving the vehicle is held to be with the insured's implied permission within the meaning of the omnibus clause. For a collection of cases adopting this view see 5 A. L. R. 2d, Anno., p. 629.

But we have declined to follow that view. *Sordelett* v. *Mercer*, 185 Va. 823, 835, 40 S. E. (2d) 289, 294; *State Farm Mut. Automobile Ins. Co.* v. *Cook*, 186 Va. 658, 665, 43 S. E. (2d) 863, 866, 5 A. L. R. (2d) 594; *Fidelity, etc., Co.* v. *Harlow*, 191 Va. 64, 72, 59 S. E. (2d) 872, 875.

In *Sordelett* v. *Mercer, supra* (185 Va., at page 835, 40 S. E. (2d), at page 294), we held that "Permission to do a specific thing is not permission to do all things;" that express permission to an employee to use a truck in order to get his supper was not implied permission to go off on a mission of his own.

It is true that implied permission may arise from a course of conduct between the parties. Examples of this are found in *Hinton* v. *Indemnity Ins. Co.*, 175 Va. 205, 8 S. E. (2d) 279, and *State Farm Mut. Automobile Ins. Co.* v. *Cook, supra*. In each of these cases there was a mutual acquiescence in, or a lack of objection to, a continued use of the car, signifying assent. Under such circumstances we applied the holding in *Brower* v. *Employers' Liability Assur. Co., supra*, that "The word 'permission' has a negative rather than an affirmative implication; that is, a permitted act may be one not specifically prohibited as contrasted to an act affirmatively and specifically authorized." (177 A., at page 829.)

The case at bar is not one involving a course of conduct between the parties. It involves a single transaction. There are no prior circumstances to indicate that Fleming acquiesced in, or assented to, Walker's use of the car for his own purpose or pleasure. Nor was there anything in the attending circumstances to indicate to Fleming that Walker would do so.

The facts in the case before us are somewhat similar to those in *Brower* v. *Employers' Liability Assur. Co., supra*, from the highest court of Pennsylvania, in which State the policy with which we are concerned was written. There the car was delivered by the insured for repairs to a mechanic who did work at his home. While the mechanic had possession of the car for this purpose he drove it on a personal mission to a city some sixty miles away and was involved in an accident. It was held

that the mechanic had not used the car with the insured's permission so as to come within the protection of the omnibus clause.

While the deviation in that case was greater in distance than that in the case at bar, the departure from the purpose of the bailment in the present case is just as marked as that in the case cited.

It is interesting to note that denial of liability of the insurance company in the *Brower Case, supra,* was based partly upon the exception in the omnibus clause "that the protection granted * * * shall not be available * * * to an automobile repair shop."

Such exception, it was said, "was intended to exclude those engaged in the business of repairing automobiles, as this mechanic was." (177 A., at page 830.)

The omnibus clause in the policy before us, in almost identical language, provides that "The insurance with respect to any person or organization other than the named Insured does not apply: * * * to any person * * * operating an automobile repair shop."

It is not necessary that we decide whether coverage should be denied under this provision of the policy as construed in the *Brower Case, supra.*[3] We prefer to rest our holding upon the ground that the evidence fails to show that at the time of the accident the "actual use of the automobile" was with the permission, either express or implied, "of the named insured."

To sustain a recovery against the insurance company under the omnibus clause in the case at bar would be tantamount to saying that when the owner of a motor vehicle places it in the hands of a mechanic for repairs, or in the hands of a service station operator to be lubricated or washed, without imposing any prohibition or restriction on the use of it, the owner thereby impliedly consents to the use of the vehicle by the mechanic or workman on some personal mission of the latter. We have been cited to no case, nor have we been able to find any, which goes so far.

The conclusion we have reached makes it unnecessary that we discuss the assignment of error that the judgment in favor of

[3]For other cases on the subject see 45 C. J. S., Insurance, § 834, p. 910. Compare, *Ocean Acci., etc., Corp.* v. *Blackstock,* 165 Va. 98, 181 S. E. 364; *Lumbermens Mut. Cas. Co.* v. *Indemnity Ins. Co.,* 186 Va. 204, 42 S. E. (2d) 298.

Peach against Walker was void and unenforceable for want of due process.

The verdict of the jury is set aside, the judgment of the lower court reversed, and final judgment will be here entered in favor of the plaintiff in error insurance company.

*Reversed and final judgment.*