## Richmond

VIRGINIA FARM BUREAU
MUTUAL INSURANCE COMPANY

V.

APPALACHIAN POWER COMPANY, ET AL.

Record No. 820390.

September 7, 1984.

Present: All the Justices.

*John H. Tate, Jr. (Gwyn, Tate & Tate*, on briefs), for appellants.
*William M. Moffet (G.P. Young; Penn, Stuart, Eskridge & Jones; Campbell, Young & Hodges*, on briefs), for appellees.

COCHRAN, J., delivered the opinion of the Court.

Appalachian Power Company (APCO) filed its motion for judgment in the trial court against Virginia Farm Bureau Mutual Insurance Company (Farm Bureau) and Grain Dealers Mutual Insurance Company (Grain Dealers). APCO alleged that it had obtained a judgment for $1,199.08 against James Frank Keesee, that the judgment was unsatisfied, that Keesee was an insured under certain automobile liability policies issued by Farm Bureau and Grain Dealers, and that Farm Bureau and Grain Dealers were obligated to pay the judgment. In a jury trial, the jury re-

turned a verdict for APCO against Farm Bureau in the amount sued for; the trial court entered final judgment on the verdict.

On appeal, Farm Bureau contends that the trial court erred in instructing the jury and in permitting APCO to introduce into evidence its judgment against Keesee. Grain Dealers is included as an appellee with APCO.

On April 2, 1980, a 1979 Triumph automobile operated by Keesee struck and damaged an APCO utility pole. The Triumph was demolished. Keesee had a liability policy issued by Grain Dealers, while Homer Parsons (Homer), in whose name title to the Triumph was registered, was the named insured in a policy issued by Farm Bureau. Homer's insurance policy covered "the named insured and any resident of the same household," as well as "any other person" who used the Triumph "with the permission of the named insured." APCO brought an action against Keesee and Homer, but it nonsuited Homer and obtained judgment by default against Keesee before initiating the present action against Farm Bureau and Grain Dealers.

Homer had a number of vehicles in the business in which his son, Gary, was associated with him. According to Homer, the titles and insurance for all the vehicles were in his name. Homer testified that he traded in another vehicle for the Triumph about four months before the accident, then turned the Triumph over to Gary to use. Gary gave Homer money to pay the insurance premiums, made monthly payments on the car loan, and may have co-signed with Homer the note evidencing the debt. Gary, who was about 25, was married; he did not reside in Homer's household. He lived part of the time with his wife at their home in Sugar Grove and part of the time alone in Marion. Homer testified that Gary kept the Triumph and could use it whenever he wished but that no one else, except Gary's wife, was supposed to drive it.

About two months before the accident, Gary's driver's license was suspended. Homer testified that he then told Gary to park the Triumph and not let anyone drive it, and that they would sell the car. According to Homer, Gary gave assurances that he had parked the car, but he failed to comply with Homer's request that he leave it at Homer's house. Whenever Homer saw Gary after he lost his license, however, he was riding in someone else's car. Homer testified that he did not know Keesee, had not talked to him about using the Triumph, and had never seen him drive it. When he received a call one night informing him that the Tri-

umph was on the highway he "came to Marion hunting for it" but could not find it. Upon resuming his search the next morning, he found the wrecked car at a service station, where it had been towed during the night from the scene of the accident. He paid the bank $3,500, the difference between the balance of the car loan and the amount of the car's collision insurance. Gary did not pay any of this amount.

Keesee, who was driving the car when it struck the APCO pole, testified that he had driven it "off and on for a couple of months because Gary had lost his license" and "had to get somebody to drive him." Whenever Keesee was available, usually on weekends, he drove Gary around. He said he never talked to Homer about using the Triumph but sometimes saw him and spoke to him while driving it. Keesee also testified that Gary said that he and Homer were co-owners of the car. On the night of the accident, Keesee testified, he was driving the car because Gary, who "got locked up the day before," called from jail and asked him to get it "away from Shelley Sharp and some other guy who was riding around town in it." Gary told Keesee to " 'use it like you want to.' " Keesee was insured by Grain Dealers; his policy was introduced as an exhibit.

Joanne Spencer testified that on at least one occasion she drove Gary to his father's house in her car. She never drove him there in the Triumph.

Over Farm Bureau's objection, the trial court admitted into evidence the unsatisfied judgment that APCO obtained against Keesee in the amount of $1,199.08. This evidence was presented to establish the damages which APCO was entitled to recover.

■ Farm Bureau objected to the trial court's granting of Instructions Nos. 1 and 2 tendered by APCO and its refusal to grant Instruction D-3 tendered by Farm Bureau.* We agree with Farm Bureau that the trail court erred it its rulings on these in-

---

\* INSTRUCTION NO. 1

The Court instructs the jury that if James Keesee drove the 1979 Triumph automobile with the express or implied permission of Gary Parsons, then Virginia Farm Bureau Mutual Insurance Companies' policy covered James Keesee so long as he used the vehicle for the permitted purpose. James Keesee had express permission if Gary Parsons directly stated that he could drive the vehicle; he had implied permission if there was a course of conduct between Gary Parsons and James Keesee from which you can fairly infer Gary Parsons' consent to the operation.

Permission, express or implied, to use a vehicle for a particular purpose may not be unreasonably exceeded.

structions, the effect of which was to tell the jury that Farm Bureau would be liable if Gary gave Keesee express or implied permission to drive the Triumph. The contractual obligation of Farm Bureau under its policy was to insure a person using the Triumph not with the permission of Gary, but with the permission of Homer, the named insured.

■ APCO argues that the evidence shows conclusively that Homer delivered the Triumph to Gary for his general use. Conceding that the permissive use must flow from the named insured to the user, APCO says that one with whom the named insured has left a vehicle for general use may permit its use by another, who will be deemed to have the permission of the named insured. We approve this statement of the applicable rule of law.

While we have not heretofore explicitly approved this principle, we have implicitly done so in *Robinson* v. *Fidelity & Cas. Co. of N.Y.*, 190 Va. 368, 57 S.E.2d 93 (1950). In that case, the insured, a merchant seaman, left his car with a friend before going to sea. He told her " 'he was leaving the car with her, but he did not

### INSTRUCTION NO. 2

The Court instructs the jury that you shall find your verdict for the plaintiff and against Virginia Farm Bureau Mutual Insurance Company if the plaintiff has proved by the greater weight of the evidence that at the time of this accident James Keesee was operating the 1979 Triumph automobile with the express or implied permission of Gary Parsons.

You shall find your verdict for the plaintiff and against Grain Dealers Mutual Insurance company if the plaintiff has not proved by the greater weight of the evidence that at the time of this accident James Keesee was operating the 1979 Triumph automobile with the express or implied permission of Gary Parsons.

### INSTRUCTION D-3

The Court instructs the jury that the Defendant, Virginia Farm Bureau Mutual Insurance Company (Virginia Farm Bureau) had a policy of insurance with Homer J. Parsons on April 2, 1980, which provided that certain persons were considered to be insured under the terms of the policy.

In this case the automobile was owned by Homer J. Parsons and he had purchased liability insurance from Virginia Farm Bureau. The car was being operated by James Frank Keesee. The issue in this case is as follows:

Was James Frank Keesee an insured under the policy of Homer J. Parson? The Plaintiff or the Defendant must prove this fact by a preponderance of the evidence.

In order to find that Keesee is an insured under the policy of Mr. Parsons, and for the Defendant, Virginia Farm Bureau to be responsible for any damages, the Jury must find, by a preponderance of the evidence, that Keesee was using the automobile with the permission, express or implied, of Mr. Parsons, and that his actual operation was within the scope of such permission.

Unless and until such permissive use, within the scope of such permission, is so proven, your verdict must be for the Defendant, Virginia Farm Bureau Mutual Insurance Company.

want to come back and find it wrecked.' " *Id.* at 371, 57 S.E.2d at 94. The friend asked one Beasley to pick up the car from a garage and drive it to her house. Beasley decided to go by his brother's house, and on the way he was involved in an accident. Robinson obtained a judgment against Beasley for injuries received in the accident. Unable to collect from Beasley, she sued the insured's insurance carrier on the theory that Beasley had the insured's implied permission to use the car. The trial court struck Robinson's evidence. On appeal, we reversed, holding that (1) Beasley had implied permission to use the car, and (2) there was a jury question whether the scope of the permission was broad enough for him to use the car to visit his brother. *Id.* at 372-73, 57 S.E.2d at 95. We held that since the insured gave the car to his friend "for her own general use during his absence . . . she stood in the shoes of the owner." *Id.* at 371, 57 S.E.2d at 94. She had "general authority" over the car and could allow others to use it "under appropriate circumstances." *Id.* at 372, 57 S.E.2d at 94. *See Utica Mutual Insurance Company* v. *Rollason*, 246 F.2d 105 (4th Cir. 1957); *Indiana Lumbermen's Mutual Insurance Co.* v. *Janes*, 230 F.2d 500 (5th Cir. 1956).

Whether there is permission to use a car is generally a question of fact. In *Hinton* v. *Indemnity Ins. Co.*, 175 Va. 205, 8 S.E.2d 279 (1940), a salesman had "full possession and control" over one of his company's cars. The salesman's father supervised the operation of the cars. While driving the car with the salesman's permission, one Hodges struck and killed plaintiff's decedent. Plaintiff obtained a judgment against Hodges but was unable to collect it; accordingly, she sued the company's insurer on the theory that Hodges had the company's permission to use the car. The trial court set aside a verdict for plaintiff; on appeal, we reversed and reinstated the verdict. Noting that there was evidence the salesman's father, a company officer, had indicated "acquiescence and tacit consent" to Hodges's use of the car, we held that it was a jury question whether Hodges had the father's implied permission. *Id.* at 216, 8 S.E.2d at 284. *See also Liberty Mut. Ins. Co.* v. *Tiller*, 189 Va. 544, 53 S.E.2d 814 (1949); *State Farm Mut., Etc., Ins. Co.* v. *Cook*, 186 Va. 658, 43 S.E.2d 863 (1947).

If the evidence is not conflicting, of course, the question of implied permission is not for the jury. Thus, where the uncontradicted evidence showed that an employee operated a company vehicle on personal business contrary to express instructions, we

have held as a matter of law that there was no implied permission. *Aetna* v. *Czoka*, 200 Va. 385, 392, 105 S.E.2d 869, 874 (1958); *Fidelity and Casualty Co. of New York* v. *Harlow*, 191 Va. 64, 71, 59 S.E.2d 872, 875 (1950).

In the present case, the evidence was conflicting on the question of permission. Homer testified that initially only Gary and his wife were to use the Triumph and that after Gary lost his driver's license, no one was to use it. Keesee, however, testified that while operating the car, he saw Homer and spoke to him, from which the jury could have concluded that Keesee had Homer's implied permission to use the car. *See State Farm Mut., Etc., Ins. Co.* v. *Cook, supra; Security Mutual Casualty Co.* v. *Hoff*, 54 Ohio St.2d 426, 377 N.E.2d 509 (1978); *Lumbermens Mutual Casualty Co.* v. *Poths*, 104 Ill. App.2d 80, 243 N.E.2d 40 (1968).

The trial court apparently accepted the argument advanced by APCO and Grain Dealers that although Homer was the named insured, Gary was the car's true owner and the only question, therefore, was whether Gary gave Keesee permission to use the car. On appeal, while arguing that Gary had general use of the car and thus the power to grant permission to another to use it, APCO again contended that Gary was the true owner. On brief, Grain Dealers argued that Gary alone, either as owner or permissive user, was insured under the Farm Bureau policy and could give Keesee permission to use the car. Whether Gary had an ownership interest in the car, however, is irrelevant. Only if Homer, the named insured, had given Gary general use of the vehicle could Gary bring Keesee within the policy coverage by granting him permissive use.

*Hartford Accident & Indemnity Co.* v. *Peach*, 193 Va. 260, 68 S.E.2d 520 (1952), cited by APCO and Grain Dealers, is distinguishable. In that case, with the insurer's knowledge, a car was registered in the name of Fleming, but the named insured was his wife. Fleming left the car with Walker to repair it, and Walker wrecked it, injuring Peach, who sued the insurer to collect a judgment against Walker. We held that although the insurance policy referred to "permission of the named insured," the question was whether Fleming, the owner, gave Walker permission to use the car. *Id.* at 264, 68 S.E.2d at 522. Holding that Walker was on a personal mission beyond the scope of his permissive use, we reversed the judgment entered by the trial court on a verdict for

Peach. Among other distinguishing features, the applicable statute in *Peach*, § 38-238 of the 1950 Code, required that the policy insure any person operating the car with the express or implied permission of the owner. The statute, as amended, Code § 38.1-381(a1) (Repl. Vol. 1981), requires permission of the named insured.

APCO argued that the evidence was uncontroverted that Homer left the Triumph with Gary for his general use. Although there was significant evidence to this effect, we do not agree that the evidence was without contradiction. Homer said that only Gary and his wife were to use the car. If the jury were to believe his testimony, then Gary's permitted use of the car would be restricted or limited rather than general.

Moreover, as counsel for APCO conceded in oral argument, even if a vehicle is left with another for general use, the permission for general use may be withdrawn. Homer testified that he terminated Gary's permission to use the car after Gary's license to drive was suspended. APCO says that this evidence is inconsistent with the other evidence and is insufficient to create a jury issue. We disagree. It was for the jury to determine whether permission for general use was given, and if so, whether it was withdrawn.

In *Security Mutual Casualty Co.* v. *Hoff*, 54 Ohio St.2d 426, 377 N.E.2d 509 (1978), the named insured let her son use a car that belonged to her. While driving the car with the son's permission, Hoff was involved in an accident. Although the mother had told her son not to let others use the car, there was evidence that she knew about Hoff's use of the car and made no objection. The court noted that the son was the car's "constructive owner," as he paid for its gas, insurance, and upkeep; the court said, however, that the son ordinarily could not let others use the car in view of his mother's instructions, and that there was a question of fact whether the mother had revoked her prohibition. 54 Ohio St.2d at 430, 377 N.E.2d at 510-11.

As the instructions given to the jury in the present case failed to present adequately the issues of fact raised by the evidence, we will reverse the judgment of the trial court and remand the case for a new trial.

There is no merit in Farm Bureau's contention that the trial court erred in admitting as evidence of damages the judgment that APCO obtained against Keesee. The Farm Bureau policy re-

quired the insurer to pay all sums which the insured shall become obligated to pay for property damage. As Farm Bureau conceded in oral argument, if Keesee was an insured under the policy, Farm Bureau was obligated to pay the judgment APCO obtained against him. The amount of the judgment was admissible in evidence; the only question was which insurance carrier was obligated to pay.

*Reversed and remanded.*