891 F.2d 287
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
METROPOLITAN PROPERTY AND LIABILITY INSURANCE COMPANY;
Steven Kelly Briscoe, Plaintiffs-Appellees,
v.
ZURICH AMERICAN INSURANCE COMPANY OF ILLINOIS, Defendant-Appellant,
and
Progressive Casualty Insurance Company, Defendant.
 No. 88-2152.
 United States Court of Appeals, Fourth Circuit.
 Argued: March 8, 1989.
Decided: Nov. 22, 1989.
 
 Angus Robert Everton (Vicki J. Hunt, Montedonico & Mason, Chartered, on brief), for appellant.
 Tina L. Simpson (Slenker, Brandt, Jennings & Johnston, on brief), for appellees.
 Before SPROUSE, Circuit Judge, BUTZNER, Senior Circuit Judge, and FRANK A. KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Progressive Casualty Insurance Company (Progressive) instituted this action seeking declaratory relief to resolve questions concerning insurance coverage growing out of an automobile accident on October 12, 1985, in Woodbridge, Virginia. The accident involved an automobile owned by BE & K Communications, Inc. (BE & K) and operated by appellee Steven Kelly Briscoe and another vehicle operated by Mable C. Hicks. When the accident occurred, Progressive was the automobile liability insurer for Briscoe. At that same time, appellant Zurich American Insurance Company of Illinois (Zurich) was the automobile liability insurer for BE & K, and appellee Metropolitan Property & Liability Insurance Company (Metropolitan) was the uninsured motorist insurance carrier for Hicks. The only issue presented in the court below and in this court on appeal is whether Briscoe had express or implied permission from BE & K to operate at the time of the accident the automobile owned by the latter. The district court, finding that Briscoe had permission from BE & K to operate the latter's vehicle at the time of the accident, held that Zurich and Progressive were obligated to provide insurance coverage to Briscoe in connection with the accident. Further, pursuant to a stipulation entered into between Zurich and Progressive, the district court ordered that Zurich provide the primary insurance coverage and that Progressive be secondarily liable for coverage. In this court, on appeal, Zurich raises the questions of whether the district court committed error in concluding that Briscoe had express permission from BE & K to drive the latter's vehicle from Connecticut to Virginia and in concluding that Briscoe also had implied permission to drive that vehicle at the time of the accident on October 12, 1985, and in holding that coverage by Zurich and Progressive existed. For the reasons set forth infra in this opinion, we affirm.
 
 
 2
 On October 12, 1985, Progressive provided liability insurance coverage to Briscoe while operating a "non-owned vehicle," provided that such operation was with the permission of the owner or that Briscoe had a reasonable basis for his belief that he had the permission of the owner. Zurich's policy, issued to BE & K and in effect as of said date, provided liability insurance coverage to a person operating the vehicle with the express or implied permission of BE & K.
 
 
 3
 In October 1985 Briscoe, a foreman for BE & K, was on a temporary job assignment in Connecticut, working under the supervision of one Henry Golden. Johnny Simmons was the general foreman for BE & K at the Connecticut job site. BE & K assigned to Golden a vehicle for use by Golden. There was in existence a BE & K company policy that no one was to use a company vehicle except during working hours for working purposes. However, company vehicles were assigned to supervisory personnel who were permitted to drive the vehicles to and from work provided that they did not use them for personal use. Golden was in that category of supervisory personnel. Neither Briscoe nor Simmons, however, was in that category.
 
 
 4
 At the conclusion of work on Friday, October 11, 1985, Briscoe drove Golden to an airport in Connecticut from which Golden flew back to Virginia for the weekend. Briscoe did not discuss with Golden whether or not he and Simmons could take the vehicle back to Virginia that weekend. However, Briscoe and Simmons did, in fact, drive the vehicle on that Friday evening from Connecticut to Virginia. The next day, October 12, 1985, Briscoe and Simmons drove the vehicle to the home of one of Simmons' friends in Woodbridge, Virginia, where, during an ensuing party, Simmons fell asleep. At the request of two other guests at the party, Briscoe, after obtaining the key from Simmons, drove those two guests to a nearby store to buy beer and ice. Driving back from the store to the house at which the party was being held, an accident occurred involving the vehicle being driven by Briscoe and another vehicle being driven by Hicks.
 
 
 5
 In the nonjury trial in this case, there was conflicting testimony with regard to BE & K's policy and actual practice concerning the use of BE & K vehicles. On the one hand, there was testimony that, under company policy, supervisors could only use vehicles during working hours for working purposes and for driving back and forth between home and work. On the other hand, Briscoe testified that he did not know of the existence of that policy and that he had been informed by Ray Bessett, Golden's supervisor at BE & K, prior to leaving for the Connecticut job site, that the vehicle could be driven from that site to the home of the driver. There was other testimony that the vehicle in question had been used in Connecticut for recreational purposes and for driving to stores to purchase beer, and that Briscoe had been told that the vehicle could be used for personal use on weekends. There was also testimony that the vehicle had not only been used for such personal purposes in Connecticut but also earlier in Virginia. In light of that testimony, the district court found that Briscoe had express permission to drive the vehicle from Connecticut to Virginia on October 11, 1985, and that he had the implied permission of BE & K to drive the vehicle for personal use on October 12, 1985.
 
 
 6
 We review those findings under Fed.R.Civ.P. 52(a) which provides that, with respect to findings of facts by a district court sitting without a jury, such findings "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." A review of the record in this case reveals that the findings of fact by the district court are by no means "clearly erroneous" and are supported by substantial evidence. Further, the district court's application of principles of Virginia law, which govern in this case, would appear to be entirely correct. See Va.Code Ann. § 38.2-2204. The question of whether express or implied permission has been given to drive a vehicle is one of fact. See Virginia Farm Bureau Mut. Ins. v. Appalachian Power, 228 Va. 72, 321 S.E.2d 84, 87 (1984); State Farm Mut. Automobile Ins. Co. v. Cook, 186 Va. 658, 43 S.E.2d 863, 867 (1947); Hinton v. Indemnity Ins. Co. of North America, 175 Va. 205, 8 S.E.2d 279, 283 (1940). "Under Virginia law, implied permission arises from either a course of conduct involving a mutual acquiescence in, or a lack of objection to, a continued use of the automobile, signifying consent." Liberty Mut. v. Mueller, 432 F.Supp. 325, 328 (W.D.Va.1977), aff'd, 570 F.2d 508 (4th Cir.1978). While the burden of proof in this case was upon Briscoe, who is alleging express and implied permission, see Hopson v. Shelby Mut. Ins. Co., 203 F.2d 434, 436 (4th Cir.1953), there was ample evidence in this case to permit the trial court to find that Briscoe met that burden.
 
 
 7
 Accordingly, in this case, we affirm the judgment of the district court in favor of appellees Briscoe and Metropolitan and against appellant Zurich.
 
 
 8
 AFFIRMED.