## CIRCUIT COURT OF RUSSELL COUNTY

Liberty Mutual Ins. Co., Inc.

    v.

The Travelers Ins. Co.

Case No. (Chancery) 12,197

By JUDGE DONALD A. McGLOTHLIN, JR.

April 12, 1991

    The Court has completed its review of the evidence and argument in this case and, for the reasons set forth below, is of the opinion that Tim Tiller was operating the 1982 Pontiac J2000 automobile owned by Guy Lester without the permission of Mr. Lester or his wife and outside of the scope of any permission which might have been granted by their daughter Lola Teanice Lester.

    Early Settlers Insurance Company bears the burden of proving permissive use of the Lesters' vehicle by Mr. Tiller. *Liberty Mutual Ins. Co. v. Venable*, 194 Va. 357 (1952). It has failed to bear that burden with regard to proving that either Guy Lester or Lola Lester, his wife, granted Tim Tiller permission to use their vehicle on the day he drove it and had the accident. To the contrary, the evidence which the Court considers most credible firmly convinces the Court that neither Mr. or Mrs. Lester granted any permission to Mr. Tiller to use the vehicle.

    Early Settlers contends that the Lesters' daughter, Teanice, was authorized to grant permission to Mr. Tiller to use the vehicle because it had been purchased for her

and relinquished to her for her general use. The Court is convinced from the evidence that the vehicle does not come within the general use doctrine as delineated in *Virginia Farm Bureau Mutual Insurance Co. v. Appalachian Power Co.*, 228 Va. 72 (1984). Here, although the Pontiac was primarily purchased for the purpose of providing a vehicle for the daughter, Teanice Lester, to use, her parents placed restrictions on her use of that vehicle. She was expressly told that she could not allow any other person to drive the vehicle without obtaining her parents' prior permission. Additionally, the Lesters placed restrictions on where Teanice could drive the vehicle without obtaining additional permission. The evidence shows that Teanice was aware of these restrictions as was her very close friend and cousin, Joyce Stevens. Teanice never obtained authority from her parents to allow Tiller to drive her vehicle. She did not even advise them of the fact that he had driven her vehicle on a couple of occasions prior to the day of the accident and certainly did not advise them of the fact that he was driving it on May 5, 1987.

Even if the Court were to find that Mr. Tiller was driving the vehicle with the permission of Teanice Lester, it is absolutely clear from the evidence that his use far exceeded any permission which he was granted. The only evidence before the Court of the scope of the permission granted for his use the afternoon of the fateful accident is that of Teanice Lester in her deposition. She states unequivocally that after Mr. Tiller had driven her from the vocational school in Lebanon, Virginia, back to Honaker High School some 25 to 30 minutes to the east of Lebanon, she agreed to allow Mr. Tiller to take the vehicle to a car wash across the street from the Rosebud Market in Honaker, Virginia, and directly to her home thereafter. The evidence shows that Mr. Tiller was using the automobile in the Fincastle section of Russell County, some twenty miles distant from Honaker and on the western side of Lebanon during the afternoon hours of Tuesday, May 5, 1987. He was on a lark with his friend, Kevin Huffman, driving over several of the roads in that area of the county at high speed and in an outrageously reckless manner. He was under the influence of intoxicants at the time and, in the words of his good friend, Ronnie Lampkins,

"just playing all over the road." Several residents in the area testified to having seen Mr. Tiller driving in directions away from Honaker, where he was supposed to have had the vehicle at the Lesters' house. This is not permissive use. Mr. Tiller had left on a lark of his own, far exceeding both the permitted location, time, and purpose set him by Teanice Lester.

Based upon these findings, the Court is of the opinion that neither of the insurance policies issued by the plaintiff, Liberty Mutual, and The Travelers, provides any coverage for Tim Tiller's operation of the Lesters' automobile on May 5, 1987. Accordingly, it is the opinion of this Court that the policy issued by Early Settlers to Margaret Sue Huffman would, under its uninsured motorist provisions, provide coverage for any damages Kevin Huffman or his estate sustained as a result of his injuries and death in this accident.

May 1, 1991

The Court has received the proposed draft of the Final Decree in this case and noted that one of Mr. Tate's objections to the draft was that the Court did not address the implications of § 38.2-2206(G) of the Code of Virginia. In view of his objection, the Court wanted to amplify its earlier rulings as contained in its opinion letter dated April 12, 1991.

In that letter the Court ruled that Tim Tiller's use of the Lester vehicle was not permissive. The Court further opined that neither the Lesters' insurance policy, issued by The Travelers, nor Tiller's father's insurance policy, issued by Liberty Mutual, provided coverage for his operation of the Lesters' automobile on the day in question. Implicit within these rulings, is the Court's decision that Va. Code § 38.2-2206(G) does not provide Early Settlers with a means of recouping any monies paid to the Huffman estate for the wrongful death of its decedent.

Pursuant to the agreement of the three insurers involved in this case, Liberty Mutual and The Travelers paid a settlement to Harvey Kevin Huffman's estate on its claim that Tim Tiller wrongfully caused Huffman's death. The issues of coverage were submitted to the Court

in this declaratory judgment action. Early Settler's argues that should the Court decide neither of Liberty Mutual's nor The Travelers' policies provided coverage for Tim Tiller, and it is required to be responsible for the settlement paid to the Huffman estate by virtue of its uninsured motorist coverage, Early Settlers would nevertheless be entitled under § 38.2-2206(G) to obtain reimbursement for the payment from at least Liberty Mutual because it would be subrogated to the rights of the estate to recover from Tiller's insurance policy. But, an insurer paying a claim under its uninsured motorist endorsement is subrogated only to the rights of the insured to whom the claim was paid against the tortfeasor causing the injury or death and his insurer. Upon payment of any monies toward the settlement of the Huffman estate's claim, Early Settlers would be subrogated to the estate's right to institute an action on its wrongful death claim against Tiller, and if successful there, to the estate's right to institute an action against any other insurance company providing coverage for Tiller. The Court's ruling has not affected any subrogation rights Early Settlers may have against Mr. Tiller; however, the issue of whether Tiller was provided coverage by either Liberty Mutual or The Travelers has been decided in this case. Thus, the action *ex contractu* against either Liberty Mutual or The Travelers has been adjudicated in this case. The Court has ruled against Early Settlers' claim that coverage was provided by either of the other two insurance companies.

The language in § 38.2-2206(G) to the effect that an insurer paying a claim under its uninsured motorist provisions is subrogated to the rights of the insured to whom the claim was paid against the tortfeasor's insurer, "notwithstanding that [the insurer] may deny coverage for any reason," does not mean that the uninsured motorist carrier has the right to subrogation regardless of whether the tortfeasor actually has insurance coverage, but only that if the tortfeasor's insurer is contractually obligated to pay the claim against him by virtue of the contract of insurance, the uninsured motorist carrier is subrogated to the injured person's right to claim the benefit of that contract as a third-party beneficiary. Where no coverage exists, no contract exists, and neither the injured party nor the uninsured motorist carrier may claim a right

to reimbursement from the tortfeasor's insurer. *United States v. Nationwide Mutual*, 218 Va. 861, 867 (1978). The statute does not grant the uninsured motorist carrier any greater rights than those of the injured party in an action *ex delicto* against the tortfeasor nor any greater than those of the tortfeasor in an action *ex contractu* against his insurer.

This Court has ruled that the operation of the Lesters' motor vehicle on May 5, 1987, by Tim Tiller was without permission and under circumstances that could not reasonably have been believed to have been with the permission of the owner or any other person entitled to grant authority to use the vehicle. Thus, neither Liberty Mutual's nor The Traveler's contracts of insurance provide any coverage for Tim Tiller's operation of that vehicle. Accordingly, neither of those insurers has any obligation whatsoever to pay the claims against Tim Tiller resulting from his use of the vehicle. He is not only "uninsured" within the statutory meaning of that term, but there is no insurance policy save Early Settlers' which covers his operation of the Lester vehicle May 5, 1987, when Harvey Kevin Huffman was killed.

The Court has interlined the proposed draft of the final decree presented to indicate that the rulings and amplifications contained in this letter shall also be considered as grounds upon which the Court makes its decree. The Court has entered the Final Decree as revised by those interlineations.