# CIRCUIT COURT OF FAIRFAX COUNTY

Selective Insurance Co.
of America

 v.

Rita M. Salinas,
Administratrix
of the Estate of
Jose Sanchez Valasquez, et al.

July 6, 2009

Case No. CL 2008-13275

BY JUDGE RANDY I. BELLOWS

On October 9, 2008, Selective Insurance Company of America ("Selective") filed this declaratory judgment action seeking a declaration that it does not owe a duty to defend or insure Miguel Santos Sanchez-Cabrera ("Santos") with regard to an accident caused by Santos on April 30, 2006. Trial in this matter occurred on April 20, 2009, and the closing arguments of the parties were submitted to the Court in writing. Having considered the briefs of the parties, as well as the evidence presented at trial, and the deposition testimony of Santos and Pedro Velazquez Perez ("Perez") submitted in lieu of live testimony,[1] the Court finds that Selective does owe a duty to defend and insure Santos with regard to the April 30, 2006, accident.

---

[1] *See* Trial Tr. 143-50, 152, April 20, 2009.

132

## Background

Faylen Hillard owns and operates Hillard's Painting and Home Improvement. (Trial Tr. 38, Apr. 20, 2009.) In operating his home improvement business, Mr. Hillard employs a few regular employees, as well as day laborers. *Id.* at 40. One such day laborer was Santos. *Id.* at 44-45.

In order to facilitate the operation of his home improvement business, Mr. Hillard has utilized several vehicles, including a 1987 Dodge cargo van, which was registered to Mr. Hillard personally. *Id.* at 29, 41-43. Mr. Hillard testified that, because the Dodge van contained a ladder rack, he was unable to park the van in his neighborhood. *Id.* at 43. Additionally, he testified that Hillard's Painting and Home Improvement did not own a parking lot to store its vehicles. *Id.* at 59. Therefore, Mr. Hillard asked Santos to park the van, in the evenings, at his apartment in Arlington, Virginia. *Id.* at 45-48. Mr. Hillard also testified that Santos' use of the van facilitated the operation of the business, when, at Mr. Hillard's instruction, Santos would pick up lunch for all of the employees. *Id.* at 88-89.

Santos was given the keys to the van, as well as the vehicle registration for the van. (*Id.* at 57; Santos Dep. 11:10-12:8, Jan. 16, 2009.) Mr. Hillard testified that, at some point during his possession of the van, Santos acquired a parking sticker, permitting the van to be parked at Santos' apartment complex. (Trial Tr. 59, Apr. 20, 2009.) Mr. Hillard also testified that, at Santos' suggestion, he deducted an amount from Santos' paycheck to defray the gasoline expense for the van. *Id.* at 83. Santos testified that Mr. Hillard rarely paid for gasoline for the van and Santos paid a significant amount out of his own pocket. (Santos' Dep. 18:8-18:17, Jan. 16, 2009.) Further, Santos indicated that Mr. Hillard was aware that Santos paid for gasoline for the van. *Id.* However, Mr. Hillard did not maintain any mileage records regarding the operation of the van. (Trial Tr. 104, Apr. 20, 2009.)

Mr. Hillard testified that, when he gave Santos the van, he instructed Santos:

> [t]hat he only could drive the van when he was working for [Mr. Hillard]. The only reason he had possession of the van was to store the van for [Mr. Hillard].
>
> If he needed to drive the van, if he was not working, then he would contact [Mr. Hillard] to get permission to drive it. If he did not get permission to drive the van, if anything happened while it was in his possession, he would be responsible.

(Trial Tr. 45-46, Apr. 20, 2009.) Mr. Hillard clarified this instruction during cross examination, when he explained "[i]f they use it for personal use. I never made that specification that no one is using it. If they used the vehicle without my permission, they would be responsible for it." *Id.* at 92.

Leroy Grant, an employee of Hillard's Painting and Home Improvement, testified at trial that he did not "know if [Mr. Hillard] told Santos individually, but [Mr. Grant knew] in a crowd, when everybody was there, [Mr. Hillard] would say the van could only be used for working purposes." *Id.* at 125. Pedro Perez, a day laborer who occasionally worked for Mr. Hillard, testified that "Hillard always told them not to drive the van without his permission." (Perez Dep. Tr. 21:12-21:13, Feb. 2, 2009.) However, Mr. Grant also testified that the only instruction Mr. Hillard gave him when he drove the van was to "[j]ust be careful, Pops." *Id.* at 127-28.

When asked about limitations on his use of the van, Santos testified that Mr. Hillard "told [him] from 7:30 on the job in the morning until like I got home around 5:30 and I could park the car in front of the house and I would go rest." (Santos Dep. Tr. 16:18-16:21, Jan. 16, 2009.) However, while Santos testified that he had not, prior to the accident that is the subject of this litigation, used the van for personal purposes, *id.* at 17:5-17:7, he also testified that he "could . . . drive the van [to go] to the store." *Id.* at 27:10-27:11.

Mr. Hillard also testified that he was aware that Santos did not personally own any vehicles at the time of the accident. (Trial Tr. 66, Apr. 20, 2009.) Mr Hillard, further, testified that Santos did occasionally work for others beside himself. *Id.* at 68. However, he did not testify as to how Santos got to those jobs. *Id.* at 67-68.

On the night of April 30, 2006, driving the van while intoxicated, Santos caused a car accident on Interstate 66, killing both of his passengers. (Trial Trans. 28-29, 34, Apr. 20, 2009.) During the testimony of Trooper Stefan Marcel McShan of the Virginia State Police, Counsel for the Defendants objected to the relevance of testimony regarding whether Santos was intoxicated at the time of the accident. (Tr. Trans. 34, Apr. 20, 2009.) The Court took the objection under advisement. Having considered the testimony of the parties, the Court finds the fact that Trooper McShan determined that Santos was intoxicated to be relevant to the case. One of the issues that this letter opinion will resolve is whether Santos was acting with Mr. Hillard's permission while driving the van. While it is true that the manner of operating a vehicle is not relevant to determining whether a driver was operating a vehicle with the owner's permission, *see City of Norfolk v. Ingram*, 235 Va. 433, 437, 367 S.E.2d 725 (1988), the fact that a driver was intoxicated at the

time of the accident is one factor that the Court could consider in determining whether Santos was acting within the scope of the permission given by the owner of the vehicle. Further, the Court will also consider whether Santos was acting as an agent of Hillard's Painting and Home Improvement. The context in which Santos was operating the van will be a relevant factor in determining whether Santos was acting within the scope of his employment.

At the time of the accident, Santos was not performing any work function for Hillard's Painting & Home Improvement, Inc. *Id.* at 52. Further, Mr. Hillard testified that, during the previous day, Santos and Mr. Hillard worked on a project together. At the conclusion of the project, Mr. Hillard told Santos that he "would see him on Monday." *Id.* 56-57. Mr. Hillard reported this fact to the police when he was questioned after the accident. *Id.* at 31-32.

The estates of both of these passengers have filed wrongful death actions against Santos. (Salinas Resp. to Selective's First Req. for Admis. 3, Mar. 18, 2009.) Santos has demanded that Selective, the insurer of the van, indemnify Santos in these two lawsuits. *Id.* Therefore, Selective has instituted this action to obtain a declaration that Selective has no duty to indemnify or insure Santos.

The policy insuring the van identifies the insured as Hillard's Painting & Home Improvement, Inc. The insurance policy refers to the insured as "you," throughout the policy, and defines "you" to include "anyone else while using with your permission a covered auto you own, hire, or borrow. . . ." Further, while the precise language of the "omnibus clause" contained in Virginia Code § 38.2-2204 is not expressly contained in this insurance contract, the Code requires its inclusion in all automobile insurance policies. Defendants argue that, while the clause is not expressly contained in the contract, the code and Virginia Supreme Court case law require that the clause be read into the contract. Selective, on the other hand, argues that the contract, on its face conforms to the requirements of the clause, as it is contained in the code. Because neither party objects to the application of the clause to this case, the Court need not make a determination as to which parties' interpretation of the contract and the law is correct. The "omnibus clause" provides that the policy insures "the named insured, and any other person using or responsible for the use of the motor vehicle with the expressed or implied consent of the named insured. . . ." Va. Code Ann. § 38.2-2204(A), (D) (2007).

Therefore, the central issues governing whether Selective has a duty to insure and indemnify Santos in the wrongful death actions filed by the estates of his deceased passengers are:

1. Whether Santos was operating the van at the time of the accident as an agent of Hillard's Painting & Home Improvement, Inc., thus bringing him directly within the definition of an insured under the insurance contract; and

2. Whether Santos had expressed or implied consent to use the vehicle, thus bringing him within the coverage extended by the "omnibus clause."

At the close of Selective's case, Defendants' moved to strike Selective's evidence and moved "for summary judgment on behalf of the defendants on the ultimate issue . . . whether or not there is coverage. . . ." (Trial Tr. 157, Apr. 20, 2009.) In Defendants closing brief, Defendants base this motion on two arguments. First, Defendants argue that Selective failed to present sufficient evidence to rebut the Defendants argument that "[Santos] comes within the ambit of 'You' within the meaning of the Selective policy issued to Hillards." (Def.s' Closing Br. 1.) For the reasons more completely stated below, the Court finds that Selective presented sufficient evidence to establish that Santos was not acting within the scope of his employment at the time of the accident, and, therefore, cannot be brought within the terms of the policy as an agent of the company. Therefore, the motion to strike on this basis is denied.

Second, the Defendants argue that Santos "was certainly responsible for the use of the Dodge Ram within the meaning of Virginia's "Omnibus" clause." *Id.* at 1-2. For the reasons stated more completely below, the Court finds that, as a matter of law, the fact that Santos was "responsible for the use of the" van is not, by itself, determinative of any issue in this case. Therefore, the motion to strike on this basis is denied.

*Analysis*[2]

*Was Santos Acting As an Agent of Hillard's Painting and Home Improvement, Inc. at the Time of the Accident?*

---

[2] Selective argues that Defendants bear the burden of establishing that Santos' use of the van falls within the coverage extended by the "omnibus clause." Defendants do not object to this contention, and as stated below, the Court finds that Defendants satisfy this burden. Therefore, the Court need not consider the legal arguments presented by Selective on this issue.

Defendants argue that, because the named insured under the policy is a corporation, and a corporation must function through its agents, Santos, as an agent of Hillard's Painting & Home Improvement, Inc., was insured under the policy. Selective, on the other hand, argues that Santos was not acting within the scope of his employment on the night of the accident. Further, Selective argues that the Court should not adopt an interpretation of the contract that requires it to read the language requiring permission out of the contract. Finally, Selective argues that Santos could not fall within the definition of the insured party under the policy because he had no insurable interest in the van.

The Court agrees with Selective that it cannot interpret the contract to require coverage of agents acting outside of the scope of their employment, simply because a corporation can only act through its agents. It is undisputed that Santos was not acting within the scope of his employment at the time of the accident. Rather, he was driving his passengers to their home in Maryland, after a night of drinking, at the time of the accident. While Hillard's Painting & Home Improvement, Inc., can only act through its agents, Santos was not acting in his capacity as Hillard's agent at the time of the accident.

However, the Court does acknowledge that the contract extends coverage to permissive users of the van. Therefore, Santos may still be insured under the terms of the contract, if the Court finds that Santos was driving with Hillard's permission. Next, the Court will consider whether Santos was a permissive user of the van, as it evaluates whether Santos had expressed or implied consent to use the van, within the terms of the "omnibus clause."

*Did Santos Have Expressed Consent To Use the Vehicle?*

Virginia Code § 38.2-2204 extends insurance coverage to "the named insured, and any other person using or responsible for the use of the motor vehicle with the expressed or implied consent of the named insured. . . ."

Defendants also argue that the "omnibus clause" should apply to Santos because he was "responsible for the use" of the van, as his storage of the van at his apartment was for Hillard's benefit. Defendant argues that, if Mr. Hillard gave Santos express permission to be "responsible for the use" of the van, the "omnibus clause" applies without any further consideration regarding the permissiveness of the particular use at issue in this case. However, the Court does not agree with this argument.

The Court does find that Santos was responsible for the use of the van to the extent that he was asked to park the van at his apartment in the evenings and to drive the van to and from work. However, the Virginia Supreme Court has held that permission for one use of a vehicle does not amount to

permission for all uses of a vehicle. *Aetna Cas. & Sur. Co. v. Anderson*, 200 Va. 385, 392, 105 S.E.2d 869 (1958). In *Aetna*, a truck driver was permitted to drive a truck to his home and park it over night, when he failed to finish his deliveries prior to the plant's closing time. *Id.* at 387. In that case, the Court applied an implied consent analysis to find that the driver lacked implied consent to use the truck for personal purposes, when he did so in contravention of a plant rule. *Id.* at 391-94. The driver in *Aetna* was responsible for the use of the truck, albeit for a much shorter period of time than Santos, yet the Supreme Court of Virginia considered whether his use of the truck was permissive. Further, in *Virginia Farm Bureau Mut. Ins. Co. v. Appalachian Power Co.*, 228 Va. 72, 80, 321 S.E.2d 84 (1984), presents a situation where the Court recognized that the fact that a car was left in the possession of a person did not necessarily reflect that the possessor had general permission for the use of the car. Instead, the Court found that a limited permission may have been granted. *Id.* Therefore, this Court finds that it must consider whether Santos had expressed permission for the general use of the van or implied permission for the specific use of the van at issue in this case.

In evaluating Va. Code § 38.2-2204, the first question for the Court to consider is whether Santos had "expressed consent" to use the van. It is clear from the facts of the case that Santos did not have expressed consent to use the van for personal purposes. Mr. Hillard testifies that "I never had him ask me to use the vehicle for a specific reason." (Trial Tr. 110, Apr. 20, 2009.) Further, Mr. Hillard's testimony regarding the limitations that he placed on the use of the van reveal that permission to use the van for personal purposes was not expressly given. Rather, Mr. Hillard testifies that he told Santos that, "[i]f he needed to drive the van if he was not working, then he would contact [Mr. Hillard] to get permission to drive it. If he did not get permission to drive the van, if anything happened while it was in his possession, he would be responsible." (Trial Tr. 45-46, Apr. 20, 2009.) Given that no evidence was presented to indicate that Santos did, in fact, seek permission, or that Mr. Hillard gave permission for Santos to drive the van on the night in question, the Court finds that there was no expressed consent to use the van.

*Did Santos Have Implied Consent To Use the Vehicle?*

Next, the Court must consider whether implied consent was given for Santos' personal use of the van. In *Hinton v. Indemnity Ins. Co.*, 175 Va. 205, 213-14, 8 S.E.2d 279 (1940), the Court held that:

[u]nder the Virginia statute, the permission of an assured in a liability insurance policy, to bind the insurance company, may be either express or implied. To be express, it must be of an affirmative character, directly and distinctly stated, clear and outspoken, and not merely implied or left to inference. On the other hand, the correlative word, "implied," as defined in *Webster's New International Dictionary* (2d ed.), means "inferential or tacitly conceded." It involves an inference arising from a course of conduct or relationship between the parties, in which there is mutual acquiescence or lack of objection under circumstances signifying assent. An implied permission is not, therefore, confined alone to affirmative action.

In [*Tomasetti v. Maryland Casualty Co.*, 117 Conn. 505, 169 A. 54, 55 (1933),] a case somewhat similar in its facts to the instant case, it was held that the word "permission," unqualified by the adjective "implied," in an insurance policy, is used in the sense of leave, license, or authority. Such permission, said the court, "is not necessarily limited to that granted by arrangement between the parties or otherwise in definite, express terms. It may arise and be implied from a course of conduct, pursued, with knowledge of the facts, for such time and in such manner as to signify, and be compatible only with, an understanding consent amounting to a grant of the privilege involved."

"The word 'permission' has a negative rather than an affirmative implication; that is, a permitted act may be one not specifically prohibited as contrasted to an act affirmatively and specifically authorized. That it appears in automobile policies would indicate that anyone having permission or color of authority is included within the clause."

*Id.* (quoting *Brower v. Employers' Liability Assur. Co., Ltd., etc.*, 318 Pa. 440, 177 A. 826, 829 (1935)); see also *State Farm Mut. Auto. Ins. Co. v. Cook*, 186 Va. 658, 666-67, 43 S.E.2d 863 (1947). In this case, it appears to the Court that Santos' use of the van on the night in question was a use "not specifically prohibited." *Id.* at 214. Therefore, the Court finds that there was implied consent for Santos' use of the van.

This case turns on Mr. Hillard's instruction to Santos. Mr. Hillard testified that Santos was given the van to use for work purposes. If Santos desired to use the van for a personal use, he was to ask permission. Further, if Santos failed to ask permission, Santos was responsible for anything that

happened while he was driving the van. (Trial Tr. 45-46, 92, Apr. 20, 2009.) The Court finds that this instruction gives Santos implied consent to use the van for personal purposes. Mr. Hillard instructed Santos that failure to ask permission prior to a personal use of the van would make Santos responsible for any accidents that might occur. Mr. Hillard, however, did not instruct Santos that he would fire Santos if Santos drove the van without permission. Mr. Hillard, in fact, did not instruct Santos that any negative action would be taken against Santos if he drove the van without permission. Mr. Hillard simply told Santos that, if he drove the van without first seeking permission, Santos would be held responsible if anything were to happen. Therefore, the Court finds that there was no specific prohibition against operating the vehicle, and thus, there was implied consent to Santos' use of the vehicle.

Further, the Court finds that Mr. Hillard's attempt to limit his liability if Santos drove the van without his express permission fails. Virginia Code § 38.2-2204 provides that the "omnibus clause" must be included in all "polic[ies] or contract[s] of bodily injury or property damage liability insurance, covering liability arising from . . . use of any motor vehicle . . . issued or delivered in this Commonwealth to the owner of such vehicle . . . that is principally garaged . . . or used in this Commonwealth." Va. Code § 38.2-2204(A) (2007); see also Va. Code § 38.2-2204(D) (2007). Further, § 38.2-2204(E) provides that "[a]ny endorsement, provision, or rider attached to or included in any such policy of insurance which purports or seeks to limit or reduce the coverage afforded by the provisions required by this section shall be void. . . ." Id. at § 38.2-2204(E). Therefore, the Court finds that Mr. Hillard did not have the power to unilaterally remove his insurance contract from the application of the "omnibus clause," while simultaneously giving Santos implied consent to use the vehicle for personal use. The "omnibus clause" is statutorily mandated in all automobile insurance policies. Additionally, the code expressly provides that the coverage extended by the clause cannot be limited or reduced. Therefore, the Court finds that Selective does have a duty to insure and indemnify Santos in the wrongful death actions brought by Santos' two passengers.

Selective argues that this case is governed by *Aetna Cas. and Sur. Co. v. Anderson*, where the Court found that, in the absence of acquiescence to prior personal use and in light of an express prohibition against personal use of a work vehicle, there was no implied consent to use the work vehicle. *Id.*, 200 Va. 385, 105 S.E.2d 869 (1958). However, the present case is distinguishable from *Aetna*. In *Aetna*, "[w]hen the truck was kept at the driver's home overnight, a plant rule required that it be taken there and parked as soon as the driver completed deliveries and he was not to use it for his

personal use." *Id.* at 387. However, in this case, while Mr. Hillard's instructions initially limit use of the van for work purposes, they conclude with an instruction that, if Santos did use the van for personal purposes without first obtaining consent, he would bear responsibility for accidents. Mr. Hillard's instructions are different from a complete ban on personal use because they imply that personal use is not prohibited, but rather the employee would bear the consequences of his actions if an accident occurred. In fact, if Santos used the van for personal purposes and safely returned to his apartment without getting into an accident, Santos would not have broken any rules and would not bear any personal liability pursuant to Mr. Hillard's instructions. In contrast, the instructions to the truck driver in *Aetna* suggest that, if the truck driver was caught driving the truck for personal purposes, even if he successfully avoided any accidents, he would be in violation of the plant rule. Therefore, this Court finds that *Aetna* is distinguishable from the facts of the present case.

## Conclusion

In conclusion, this Court finds that Santos was not operating within the scope of his employment at the time of the accident. Therefore, Santos is not including within the definition of the named insured in the insurance contract between Selective and Hillard's Painting & Home Improvement, Inc. Further, Santos was not operating the van at the time of the accident with the expressed consent of Mr. Hillard. However, Santos was operating the van at the time of the accident with the implied consent of Mr. Hillard. Therefore, coverage under Hillard's Painting and Home Improvement, Inc.'s policy must be extended to Santos pursuant to the "omnibus clause" of Virginia Code § 38.2-2204.

## Order

For the reasons stated in the Court's Letter Opinion issued on July 6, 2009, the Court declares that Selective Insurance Company owes a duty to indemnify Miguel Santos Sanchez Cabrera in CL 2008-3785 and CL 2008-3786. Further, the Court declares that Selective Insurance Company owes a duty to extend liability coverage to Miguel Santos Sanchez Cabrera with respect to the accident which occurred on April 30, 2006. Finally, the Court finds that any stay entered in CL 2008-3785 and CL 2008-3786 relating to the determination of the instant declaratory judgment action is lifted. It is so ordered.