# CIRCUIT COURT OF FAUQUIER COUNTY

Erie Insurance Co.

v.

John Japhen Willard,
Richard Gill,
and Ruby Hill

February 27, 2008

Case No. CH05-84

BY JUDGE JEFFREY W. PARKER

This case comes before the Court upon a Bill of Complaint seeking Declaratory Judgment over questions of motor vehicle liability insurance coverage for Defendant, John Japhen Willard, or uninsured motorist coverage for Defendants, Richard Gill and Ruby Hill.

Most of the facts in this matter are undisputed. Willard and Gill were employees of Defendant Hays, Inc. ("the Company"), a small plumbing company operated by Mike Hays.

Willard was provided a pickup truck by the Company for his use during his employment. On June 13, 2004, after hosting a cook out at his home, Willard was transporting Gill and a non-employee friend, Hill, back to their homes in the Company pickup when they were involved in a single vehicle accident causing severe injuries to Gill and Hill. At the time of the accident, Willard was intoxicated and was operating his truck at a high rate of speed.

According to Hays, Willard did not have permission to use the truck for non-business purposes. According to Willard (by deposition) he was never told by Hays that his use of the truck was limited (T. p. 7); however, he also stated that some people "stretched" their use of the Company vehicles (T. p. 39), suggesting that he knew that the employees were not supposed to use the vehicles for personal reasons, but that some personal use was known and tolerated by the Company.

The Company did not have an office as such where their business meetings could be conducted, but instead had "hood meetings" when they would gather in the morning in the parking lot at one of the plumbing supply places and discuss "policy." According to the Plaintiff's witnesses, this occurred frequently. According to the Defendants, this occurred rarely. At these meetings, allegedly, employees were told that there was "no drinking and driving" allowed while operating Company trucks and that there was to be "no unauthorized use of the vehicles."

The Company had no written policy manual, nor was there any signed memorandum by the employees directing that they not use the vehicles for personal matters. The only document in evidence supporting the alleged driving policy of the company was a two page document entitled "Gas Allowances" which on the second page stated as follows:

> 8: As always, Co. vehicles are for company use only! They are to be used to and from job sites and supply runs only. If you have the privilege of a CO. vehicle, it is for your transportation only. No one that is not an employee of Hays, Inc., is to be in the vehicle at any time. It is not to be used for personal use of any kind.

This document is undated. It was allegedly placed in the employees' pay envelope sometime during the employment tenure of Willard and Gill. Willard denied knowledge of this paragraph but admitted receiving a memorandum "as far as gas was concerned." (T. p. 25.)

Gill was not provided a truck and stated he did not receive the memorandum, although he was with some of the other employees while they were discussing the gas reimbursement.

It is undisputed that the employees were to keep the vehicles at their homes during off hours and were responsible for oil changes and lubrication. There was testimony that the employees could use the vehicle for personal matters if they asked "permission" first of Hays. Hays even claimed that his wife needed to ask him permission. Other testimony was to the effect that individuals used their trucks for personal errands without permission, albeit in a limited fashion.

The primary question for the Court is whether this accident occurred while in the scope of Willard's permitted use, thus invoking liability coverage under the policy of insurance underwritten by the Plaintiff. Alternatively, the question is, if there is no liability coverage, is there uninsured motorist coverage under the same policy?

Victoria Insurance Company was joined as a third-party defendant; however, after discovery, it was represented that Victoria was not subject to any liability coverage in this matter and it would be dismissed from this suit.

## Discussion

The liability protection provision of the Erie policy reads as follows in pertinent part:

> We will pay all sums *anyone we protect* legally must pay as damages. . . .
> "anyone we protect" means . . . anyone else while using an *auto we insure* with your permission. . . .

(Emphasis in original.)

It is undisputed that there was no express permission for Willard to use the vehicle on the 13th day of June for that trip. However, if Willard had implied permission for this use, then that is sufficient to impose liability. For the reasons set forth herein, this Court finds Willard had implied permission to use the truck on the night in question.

In order for the Court to determine if Willard had implied consent of Hays to use the truck to transport Gill and Hill, it must examine his course of conduct while the vehicle was in Willard's possession. *Hartford Accident & Indemnity Co. v. Peach*, 193 Va. 260, 266, 68 S.E.2d 520 (1952).

A significant fact for this Court was that each employee kept his vehicle twenty-four hours per day, seven days per week. Additionally, there was no mileage accounting to the Company by employees for trips on the job. The company provided only a flat daily reimbursement for gas. There was conflicting evidence regarding the degree of private use, but there was no question that the vehicles were, in fact, used for non-business purposes by employees (for example, even commuting is a non-business use).

In *Liberty Mutual Ins. Co. v. Tiller*, 189 Va. 544, 53 S.E.2d 814 (1949), and in *State Farm Mutual Ins. Co. v. Cook*, 186 Va. 658, 43 S.E.2d 863 (1947), employees were given exclusive control over their employer's trucks, which included taking the vehicles home at night. Some limited personal use was permitted, but accidents occurred in those cases while employees were using the vehicles for personal matters outside the scope of any express permission. In both cases, the Supreme Court held that the employees had exclusive control of their vehicles at all times and, as a result, had the implied permission of the employer to use the vehicles.

This stands in contrast to the *Hartford Fire Ins. Co., t/a Twin City Fire Ins. Co. v. Davis*, 246 Va. 495, 436 S.E.2d 429 (1993). In *Davis*, a mechanic fixing a car was given permission on one occasion to drive the owner's vehicle to the repair shop. Thereafter, the mechanic drove the vehicle for his own personal use and was involved in an accident. At no time was he ever given permission by the owner to drive the vehicle personally or to drive it for any reason other than to the Shop. Coverage was held to be properly denied under the owner's policy. 246 Va. at 500.

A closer case factually to the case at bar is *Aetna v. Czoka*, 200 Va. 385, 105 S.E.2d 869 (1958). In *Czoka*, the employee used a company truck to drop off a load of fertilizer late in the afternoon and, by the time he got back to the plant, the parking lot had closed. He made a slight detour to go home, stopped to have some drinks, and later got into an accident. The Court found that permissive use should not be implied. However, in contrast to the case *sub judice*, the Court in *Czoka* found enforcement of the "no personal use policy" to have been clearly set forth by the Company. *Id.* at 387. The trucks were normally stored nightly at the Company, and the driver had been given explicit instructions regarding truck use on that particular day. *Id.* at 390.

This Court in this case does not find consistent enforcement of the no personal use rule based upon the testimony and observations of the parties. Additionally, the communication to the employees of Hays' "no personal use" rule was haphazard and poorly documented.

The allegation by Erie that the Company's "no-drinking while driving" rule should abrogate coverage is at variance with *City of Norfolk v. Ingram*, 235 Va. 433, 367 S.E.2d 725 (1988). In that case, the City attempted to void coverage of an employee because the driver was under the influence of alcohol at the time of the collision in violation of City Rules.

The "omnibus clause" as it is commonly called, Va. Code § 38.2-2206, sets forth minimum coverage requirements that must be contained in all auto policies for liability insurance issued in Virginia. The Supreme Court in construing this omnibus clause has stated that "[w]e have found no prior Virginia case discussing the loss of omnibus coverage because the bailee operated the owner's car in a *manner* violating the owner's instructions." 235 Va. at 437 (emphasis in original).

As operating a vehicle under-the-influence or recklessly deals with the *manner* of operation and not the status of the operator (as being without authority), it is not a factor for the Court to consider in determining coverage in the case *sub judice*.

This Court finds that the Defendant has carried its burden of proof (see *Davis*, 246 Va. at 498) consistent with a reasonable construction of the omnibus clause and that, on the date in question, Willard operated his vehicle within the implied permission of his employer.

Alternatively, the parties raised the issue of coverage under the Uninsured Motorist coverage of the policy. Erie claims that no UM coverage can be afforded without the employer giving implied permission to drive, citing *Nationwide v. Harleysville Mutual Casualty Co.*, 203 Va. 600, 125 S.E.2d 840 (1968). Defendants, Gill and Bill argue that *Harleysville* has been overturned by changes in the omnibus clause occurring after *Harleysville* was decided, therefore, making a finding of implied permission unnecessary. They argue that only the passenger's reasonable reliance on the appearance of authority is relevant. The Court is not persuaded by the Defendants' argument, but as the Court, by this opinion, has just held that the liability portion of the policy applies to the driver, no finding on this question need be made.